**George Wickstrom, Sr., Plaintiff-Appellee, v. Vern E. Alden Company, Defendant-Appellant.**

**Gen. No. 52,695.**

First District.

August 28, 1968.

James A. Dunkin, Edwin R. Dunn, and Baker & McKenzie, of Chicago, for appellant.

Leonard E. Newman, of Chicago, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is a contract action wherein the plaintiff sought to recover certain amounts by virtue of the defendant's failure to make retirement payments pursuant to contract between the parties. The case was tried on an agreed statement of facts and briefs. The court entered judgment on the complaint against the defendant and in favor of the plaintiff in the sum of $6,105.13 and costs of suit, and entered judgment on the counterclaim in favor of the defendant-counterclaimant and against the plaintiff in the sum of $730.44 and costs of suit, and ordered said sum set off against the plaintiff's judgment, thereby reducing the same to $5,374.69 and costs of the suit. The defendant appealed.

The plaintiff, a partner in the defendant partnership, served as Chief of Mechanical Design for approximately eleven years prior to his retirement. Paragraph 6.05 of the Partnership Agreement provided that "in the event a Partner resigns, the Senior Partners will work out an

agreement on the basis of which the current balance in his capital account will be returned to him." The amount of cash paid to any Partner upon resignation would not exceed 20% of the balance in his capital account, and the remaining balance thereof could be paid in participation certificates or promissory notes, which notes would bear interest at the rate of 6 percent per annum.

Paragraph 12.03 of the Partnership Agreement provided:

> *"Involuntary Resignation.* Nothing in this agreement shall prevent a majority of the Partners from terminating the relationship between the Partnership and a Partner; that is to say, that if in the judgment of a majority of the Senior Partners, it becomes necessary to sever the relationship between the Partnership and any Partner, it is agreed that the Partners, acting by a majority, may request the resignation of such a Partner."

Vern E. Alden, a Senior Partner, apparently acting on behalf of the majority of the partners, sought the plaintiff's resignation. To secure that end, he drafted and submitted to the plaintiff a certain contract dated September 12, 1958. It stated that in the judgment of the Senior Partners, the plaintiff could not continue to discharge the responsibilities as Chief of Mechanical Design in an acceptable manner; that the Senior Partners believed it best that the plaintiff retire and they agreed to certain conditions which would make it easier for him to retire, among which were:

> "(1) Beginning September 15 you will receive retirement pay at the rate of $300 per month . . . for a period of ten years. In the event of your death during this period . . . , Vern E. Alden Company would continue to pay $300 per month to your wife, Vera, for the balance of the ten

year period. In the event of your death, followed up by the death of Vera, then the retirement pay would stop one month after Vera's death.

"(2) There is a balance of approximately $31,000 in your capital account. We are willing that you withdraw, if you care to do so, $1,000 on October 15, $1,000 on February 1, 1959, and $1,000 on April 1, 1959. The remaining $28,000 will be converted into 10-Year 12% Participation Certificates which will mature December 31, 1967. . . . You will receive interest at an annual rate of 8% on any cash balance in your capital account and you will, beginning September 15, receive interest at the annual rate of 12% on the $28,000 invested in Participation Certificates. . . .

"(3) Virginia will arrange for you to take over and pay the premiums on the amount of group life insurance which is now carried in your name.

"(4) You will have the right to seek other employment. . . . We ask, however, that for each $1000 that you receive from other employment you permit us to shrink by 20% or $200—the $3600 per year of retirement pay which we have agreed to pay you for ten years' time. We think you will accept this condition as being reasonable. . . .

"(5) . . . you will accept the one other condition that in the years which lie ahead you will not say or do anything which will hurt Vern E. Alden Company and you will not reveal any confidential information which you have which bears on the operations of any one of the clients of Vern E. Alden Company."

██ The threshold factual question of whether the plaintiff's resignation was voluntary is presented, and must be determined in that the doctrine of promissory estoppel invoked by the plaintiff cannot aid his cause unless such circumstance is present. The pertinent portions of the partnership agreement heretofore mentioned, the agreed statement of facts, and the contract, are the only evidence on this issue. The plaintiff contends and the defendant denies that the resignation was voluntary. The contract, prepared by the defendant, stated that the "Senior Partners have agreed to certain conditions which will make it easier for you to retire." The second condition of retirement set forth therein was the provision for the repayment of the plaintiff's capital account. Such repayment appears to be predicated on the provision of Paragraph 6.05 of the Partnership Agreement that "in the event a Partner resigns, the Senior Partners will work out an agreement on the basis of which the current balance in his capital account will be returned to him." We thus conclude that the plaintiff's resignation was voluntary.

The plaintiff accepted the provisions and conditions of this contract and submitted his resignation. It was admitted by the defendant that the plaintiff performed the terms and conditions of the contract, and it is undisputed that the defendant repaid to him the entire amount of his capital account, plus interest, as provided for in the foregoing contract.

The defendant's answer to the complaint contained an affirmative defense that the agreement between the parties was not supported by consideration so as to constitute a legal and enforceable contract. The defendant also filed a counterclaim for insurance premiums which it advanced on behalf of the plaintiff. The agreed statement of facts specified the amount of said sum and the amounts paid to the plaintiff as retirement pay during the years in question, the respective earned income cred-

its arising by virtue of the plaintiff's employment in certain years, and the balance claimed due by the plaintiff pursuant to such computation.

The main issue presented for review is whether the agreement of September 12, 1958, is supported by consideration so as to constitute a legal and enforceable contract. The defendant contends: (1) that there was no consideration for the promise to make retirement payments to the plaintiff and that such promise was gratuitous and unenforceable, and (2) that consideration must be that promise, act, or forbearance which one party specifically seeks and requests from the other party in exchange for a promise, act or forbearance on his part.

These contentions find support in both case law and treatises. Corbett v. Cronkhite, 239 Ill 9, 15, 16, 87 NE 874 (1909); Bartlett v. Lauff, 271 Ill App 551, 555, 556 (1933); Restatement of the Law, Contracts, § 75, Comments: (b) and (c); 1 Williston on Contracts (3rd ed) § 139.

The plaintiff urges that consideration may be an act or forbearance either bargained for or induced; and that it consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment or loss suffered or undertaken by the other. Such principle of law is likewise supported by case law and treatises. Rosenberg, Inc. v. Carson Pirie Scott Co., 28 Ill2d 573, 584, 192 NE2d 823 (1963); Lipkin v. Koren, 392 Ill 400, 406, 64 NE2d 890 (1946); Bredemann v. Vaughan Mfg. Co., 40 Ill App2d 232, 242, 188 NE2d 746 (1963); 1 Williston on Contracts (3rd ed) § 140; 1 Corbin on Contracts, § 194.

Consideration for a promise has been defined in the Restatement of the Law of Contracts, § 75, as:

"(1) Consideration for a promise is

"(a) an act other than a promise, or
"(b) a forbearance, or

259

"(c) the creation, modification or destruction of a legal relation, or

"(d) a return promise,

bargained for and given in exchange for the promise."

■ It is well settled, as a general rule, that consideration is an essential element of, and is necessary to the enforceability or validity of a contract. 17 Am Jur 2d, § 86, and cases there cited. However, the doctrine of consideration embraces many theories, beliefs and definitions. As articulately stated by Professor Corbin in 1 Corbin on Contracts, § 109:

> "Knowledge of what the early law and custom were has much lively historical interest and would have some practical value, also, to courts and lawyers and clients. We must be content, however, without this knowledge, and must discover our contract law and our doctrine of 'consideration' from the reports and records of recent times, containing as they do the customs, the decisions, the doctrines, and the reasoning of the men who have been the ministers of justice.

> "The reports and records of recent times! . . . Who can now read all the reports of cases dealing with the law of consideration for informal promises, stating the reasons deemed sufficient for enforcing such promises, laying down the doctrines and constructing the definitions? Certainly not the writer of this volume. He has merely read enough of them to feel well assured that the reasons for enforcing informal promises are many, that the doctrine of consideration is many doctrines, that no definition can rightly be set up as the one and only correct definition, and that the law of contract is an evolutionary product that

has changed with time and circumstance and that must ever continue so to change."

■ It appears that courts have required consideration for the enforcement of a contract in order to prevent the enforcement of gratuitous promises. Such reason loses much of its force in that courts do not ordinarily inquire into the adequacy of the consideration, and any consideration, however slight, is legally sufficient to support a promise, except where the disparity is so gross as to raise a presumption of fraud. Bredemann v. Vaughan Mfg. Co., supra, 247; 17 Am Jur 2nd, § 102, and cases therein cited; Restatement of the Law, § 81; 1 Williston on Contracts (3rd ed) §§ 102A and 115.

In view of the failure of courts to inquire into the adequacy of the consideration for a contract, Mr. Justice Holmes, while sitting on the Supreme Judicial Court of Massachusetts, held that consideration is as much a form as a seal. Krell v. Codman, 154 Mass 454, 28 NE 578 (1891). Lord Mansfield and other English judges favored the recognition of a written agreement as a kind of formal contract for the enforcement of which no consideration was necessary. 17 Am Jur 2nd, § 87.

The contract in the case at bar set forth certain conditions heretofore listed under which the Senior Partners of the defendant partnership requested that the plaintiff retire. The basic issue here seems to be reduced to the question of whether consideration can be identified with the happening of these conditions, either as a benefit to the defendant, as promisor, or as a detriment to the plaintiff, as promisee. If so, it is a logical inference that the happening was requested as consideration. It would seem immaterial whether we consider that the defendant's promises ripened into a bilateral or unilateral contract. There was either sufficient reply on the part of the plaintiff to make it a bilateral contract, or it was

261

a unilateral contract, the acceptance of which was evidenced by the plaintiff's resignation.

In Allegheny College v. National Chautauqua County Bank, 246 NY 369, 159 NE 173 (1927), at pages 174 and 175, Chief Justice Cardozo, then sitting on the Court of Appeals of New York, in discussing the subject of consideration stated:

> "A classic form of statement identifies consideration with detriment to the promisee sustained by virtue of the promise. (Citations.) So compendious a formula is little more than a half truth. There is need of many a supplementary gloss before the outline can be so filled in as to depict the classic doctrine. 'The promise and the consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting.' (Citations.) If A promises B to make him a gift, consideration may be lacking, though B has renounced other opportunities for betterment in the faith that the promise will be kept.
>
> "The half truths of one generation tend at times to perpetuate themselves in the law as the whole truth of another, when constant repetition brings it about that qualifications, taken once for granted, are disregarded or forgotten. The doctrine of consideration has not escaped the common lot. As far back as 1881, Judge Holmes in his lectures on the Common Law (page 292), separated the detriment, which is merely a consequence of the promise from the detriment, which is in truth the motive or inducement, and yet added that the courts 'have gone far in obliterating his distinction.' The tendency toward effacement has not lessened with the years. On the contrary, there has grown up of recent days

a doctrine that a substitute for consideration or an exception to its ordinary requirements can be found in what is styled 'a promissory gestoppel.' Williston, Contracts, §§ 139, 116. . . ."

In Porter v. Commissioner of Internal Revenue, 60 F 673 (1932), at page 675, Judge Learned Hand stated that promissory estoppel is now a recognized species of consideration and cited the Restatement of the Law, Contracts, § 90, which provides:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

"Illustrations:

· "1. A promises B not to foreclose for a specified time, a mortgage which A holds on B's land. B thereafter makes improvements on the land. A's promise is binding.

"2. A promises B to pay him an annuity during B's life. B thereupon resigns a profitable employment, as A expected that he might. B receives the annuity for some years, in the meantime becoming disqualified from again obtaining good employment. A's promise is binding.

"3. A promises B that if B will go to college and complete his course he will give him $5,000. B goes to college and has nearly completed his course when A notified him of an intention to revoke the promise. A's promise is binding.

"4. A promises B $5000, knowing that B desires that sum for the purchase of Blackacre. Induced thereby, B secures without any payment

an option by buy Blackacre. A then tells B that he withdraws his promise. A's promise is not binding."

Also see: 1 Williston on Contracts (3rd ed) § 140.

■ Illinois courts have long recognized the doctrine of promissory estoppel. Estate of Beatty v. Western College of Toledo, 177 Ill 280, 292, 293, 52 NE 432 (1898); Estate of Switzer v. Gertenbach, 122 Ill App 26, 28, 29 (1905).

We conclude: that certain of the conditions under which the plaintiff was requested to retire; namely, the promise of the defendant to pay him retirement pay and to arrange for the plaintiff to take over and pay the premiums on the group life insurance in his name, could reasonably have been expected to induce him to resign, to accept the repayment of his capital fund on a restricted and long term basis and to accept the condition of a credit against his retirement pay by virtue of income derived from other employment; that such promises, which were beneficial to the defendant, did induce such action or forbearance by the palintiff; that injustice can be avoided only by the enforcement of such promises; and that such promises are binding.

■ Consequently, we believe that the contract was enforceable, either on the theory that it was supported by consideration, or under the doctrine of promissory estoppel. We adhere to the view of Judge Learned Hand that promissory estoppel is now a recognized species of consideration. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN, P. J. and SEIDENFELD, J., concur.