(No. 45683.—

THE BANK OF MARION, Appellant, v. ROBERT "CHICK" FRITZ, INC., Appellee.

*Opinion filed March 29, 1974.—Rehearing denied May 31, 1974.*

Fowler & Novick, of Marion, for appellant.

Sam S. Pessin, of Belleville, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves an action by the Bank of Marion for damages for breach of an alleged contract. A jury verdict was returned in favor of the defendant in the circuit court of Williamson County. The trial court then entered a judgment notwithstanding the verdict for $25,567.92 in favor of the plaintiff. The trial court also conditionally ruled that in case of the reversal of its order a new trial be

granted to the plaintiff. The appellate court reversed the judgment notwithstanding the verdict and the conditional order granting a new trial and reinstated the jury verdict. (9 Ill. App. 3d 102.) We granted leave to appeal.

The defendant is a beer distributor. In 1969 it contracted with Diversified Contractors, Inc., for the construction of a warehouse. Diversified had difficulty in securing financing for the construction project. To overcome this financing difficulty, the plaintiff Bank and Diversified agreed that the Bank would advance construction funds if Diversified secured a promise from the defendant to make the periodic payments due under the construction contract jointly to Diversified and the Bank. Diversified then succeeded in having defendant's president, Fritz, sign the following instrument:

"CERTIFICATION OF CONTRACT

TO:  Bank of Marion
     Public Square
     Marion, Illinois

Att: Mr. Oscar Schafale

RE:  Construction Contract on Beer Warehouse & Offices
     Highway 177 West
     Mascoutah, Illinois

This certification of contract is to confirm the contract between our company and Diversified Contractors, Inc., for the contract amount of $111,664.00—plus extras to date of $3,745.00—for a total of $115,409.00. The total amount plus any other extras and/or deletions will be made Jointly to the Bank of Marion and Diversified Contractors, Inc.

                    Signed:

                    ROBERT "CHICK" FRITZ, INC.
                    Mascoutah, Illinois

                    BY: /S/ Robert Fritz"

Diversified delivered this instrument to the Bank, which then made the construction loans. However, none of the warehouse payments were ever paid jointly to Diversified and the Bank; all payments were made directly to Diversified. Diversified eventually defaulted in its loan repayments and the Bank sued the defendant, claiming that because of the defendant's failure to make its payments jointly to Diversified and the Bank, it had suffered $34,697.28 in damages.

Fritz testified that he signed the instrument without reading it and did not know that it would be used to induce the Bank to make a loan to Diversified. According to his testimony the instrument was presented to him by Robert Morgan, vice president of Diversified, while he was busy at the plant. Morgan allegedly said that the Bank wanted assurances that Diversified was completing its contract with the defendant. It wanted to know where the defendant was working and what it was doing. Fritz accepted this explanation and signed the paper without reading it. The defendant did not receive a copy of the instrument and prior to Diversified's default the Bank never informed defendant that the instrument had been delivered to it nor did it inform the defendant that it had advanced money in reliance on the instrument.

A reading of this instrument, however, clearly shows that standing alone it does not constitute a contract. The instrument recites no consideration flowing from the Bank to the defendant. The only promise which the instrument contains is the statement of the defendant that it would make joint payments to the Bank and Diversified. It is elementary that an executory agreement without consideration cannot be enforced either in law or equity. (*Moehling v. W. E. O'Neil Construction Co.*, 20 Ill.2d 255, 265.) However, the Bank advances several theories in support of its argument that the instrument is binding.

The Bank first contends that it gave consideration for the promise of the defendant when it made loans in

reliance upon the instrument. However, the consideration which will support an action on a unilateral promise must be the bargained-for consideration. "It is only where the defendant has had the benefit of the consideration for which he bargained that he can be held bound." (*Richardson v. Hardwick,* 106 U.S. 252, 27 L. Ed. 145, 1 S. Ct. 213; see also 17 Am. Jur. 2d, Contracts, sec. 86 (1964); Restatement of Contracts, sec. 75 (1932).) The making of the loan would be consideration for the promise of joint payment if the defendant had bargained for such action by the Bank. In that case a unilateral contract would have been formed. The consideration would have been given by the plaintiff when the loans were made. However, according to the uncontradicted testimony of the defendant's president he had no knowledge that the instrument which he signed would be used or that it was in fact used to induce bank loans. The Bank may have conveyed this information to Morgan, the vice president of Diversified, but neither Morgan nor the Bank conveyed this information to the defendant.

Although there may be absent a bargained-for consideration, a person who makes a promise may nonetheless be bound by its terms. The Restatement of Contracts states the situation in this manner: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Restatement of Contracts, sec. 90 (1932).) This is generally referred to as the doctrine of promissory estoppel and is usually considered as a substitute for consideration or an exception to its ordinary requirements. (*Estate of Beatty v. Western College,* 177 Ill. 280, 293; 17 Am. Jur. 2d, Contracts, sec. 89 (1969).) The fact question created by the pleadings involves this issue of promissory estoppel. The complaint alleges that the defendant, as an inducement to the

plaintiff to furnish funds to Diversified, executed the document in question. Relying upon the promise in this document concerning joint payments, the plaintiff loaned Diversified $64,700. As a result of the defendant's failure to make the joint payments, Diversified did not repay the Bank $34,697.28 of this loan.

The defendant's answer denies that the defendant executed the document for the purpose of inducing plaintiff to furnish funds to Diversified; denies that a valid and binding contract concerning joint payments to Diversified and the Bank was made and alleges that the defendant made three payments directly to Diversified, that the checks were deposited by Diversified in its account in the plaintiff Bank and that the Bank had knowledge of these payments and never objected.

In addition to other evidence bearing on the question of inducement, certain conduct of the Bank indicates that it may not have relied upon the agreement when the advances were made to Diversified. We have already noted that no joint payments were ever made. The evidence shows that the Bank knew that Fritz was not making joint payments and failed to assert its alleged contractual rights. Three construction payments from Fritz to Diversified were deposited by Diversified in its account at the Bank of Marion. These payments were all made by check. The first check was dated November 5, 1969, and was for slightly over $50,000; the second was dated December 21, 1969, and was for $15,000; the third was dated February 10, 1970, and was for $30,000. The Bank argues that it had no reason to know that these checks represented construction payments because they were drawn by Fritz rather than Fritz, Inc. However, following the third payment, in a letter of February 23, 1970, from plaintiff's vice president to Robert Fritz, the Bank objected to Fritz's failure to make the checks payable jointly to Diversified and the Bank. Fritz testified that he never received this letter. Moreover, when the Bank received the third check for

$30,000, it credited almost $14,000 of that check to payment of the note evidencing advance number five from the Bank to Diversified, which was then overdue. These facts indicate that the Bank was fully aware that Fritz, Inc., had no intention of making joint payments. It should also be noted that the loan to Diversified was made by a series of seven advances, each represented by a separate note. Three of these advances totaling more than $42,500 were made after Fritz had made its first payment of $50,067.09 to Diversified alone and after Diversified had deposited the check in its account in plaintiff Bank. All of this evidence could be considered by the jury in determining whether or not the Bank had been induced by the agreement to advance money and if it had actually advanced money in reliance on the representation that joint payments would be made and was sufficient to support the verdict in favor of the defendant.

The trial court may enter a judgment notwithstanding the verdict only when the evidence so overwhelmingly favors one party that no contrary verdict could ever stand. (*Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill.2d 494.) We do not believe that the evidence in this case weighed so heavily in favor of the plaintiff that a judgment notwithstanding the verdict was proper. Consequently, the trial court erred in entering judgment for the plaintiff.

The trial court also made a conditional ruling that if the judgment for the plaintiff were reversed on appeal, a new trial should be granted (Ill. Rev. Stat. 1971, ch. 110, par. 68.1(6)). The appellate court held that there was no basis for granting a new trial. We agree. A verdict may not be set aside simply because the trial judge believes a different conclusion would be more reasonable. (*Guthrie v. Van Hyfte,* 36 Ill.2d 252.) In this case we do not find that the verdict of the jury was against the manifest weight of the evidence. Consequently it was error to conditionally grant a new trial.

The Bank contends that a new trial is appropriate

because the defendant acted improperly in cross-examining the plaintiff's executive vice president. The defendant allegedly impeached the witness by innuendo. However, even if this cross-examination were improper, since the plaintiff did not object at the time and did not urge that point in its post-trial motion, any objection was waived. Ill. Rev. Stat. 1971, ch. 110, par. 68.1(2).

For these reasons, the judgment of the appellate court reversing the judgment notwithstanding the verdict and the conditional order granting a new trial and reinstating the jury verdict is affirmed.

*Judgment affirmed.*