JENKINS AND BOLLER COMPANY, INC., Plaintiff-Appellee, *v.* SCHMIDT IRON WORKS, INC., Defendant-Appellant.

Second District (2nd Division)   No. 74-192

Opinion filed March 23, 1976.

McDermott, Will & Emery, of Chicago, and Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellant.

Michael L. Roach, of Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This case arises from the denial of defendant, a subcontractor (Schmidt), of the existence of any contractual obligation stemming from its written bid to the plaintiff, a general contractor, offering to furnish various metals and structural steel, and its refusal to perform and to execute a written subcontract covering its bid. Because of such refusal plaintiff hired others to perform the job it claims Schmidt had bid on and was

required to pay considerably more therefor. Plaintiff then filed suit against Schmidt for breach of the alleged contract relying on the theory of promissory estoppel and asserting that it had submitted its bid as general contractor for the construction of an addition and alterations to Lake County Nursing Home, and entered into a contract with Lake County in reliance on Schmidt's bid. Following a bench trial the trial court entered judgment against Schmidt for $33,192.42 representing the difference between the amount of Schmidt's bid ($80,130) and the increased amount ($113,322.42) which plaintiff was required to pay other subcontractors for performance.

On February 16, 1970, the architect had issued plans and specifications for the job, copies of which were delivered to various general contractors, including plaintiff. Early in March invitations to bid were sent to prospective subcontractors, including Schmidt. On March 11 Addendum No. 2 was issued changing the original specifications by (1) substituting aluminum (for stainless steel) handrails in corridor walls, dining and recreation rooms, and physical therapy and hydro-therapy rooms, and (2) adding "shelf angles around the entire perimeter of the building on each floor." Schmidt was not provided by plaintiff at any time with copies of the plans, specifications or any addenda thereto. However, Schmidt obtained copies of the plans and specifications from another prospective general contractor in early March. Schmidt's estimator, Loversky, telephoned the architect's office "three to six days before March 23rd" (*i.e.*, between March 17 and 20) stating he was having difficulty finding in the specifications two of the configurations for stainless steel handrails; Loversky was told that the architect was coming out with an alternate for aluminum hand rails.

On March 23 Schmidt sent its bid to plaintiff for "Misc. Iron & Structural Steel * * * Furnished and Installed at: Addition and Alt. to Lake County Nursing Home," proposing "to furnish" various specified metal products indicating several as "installed" or "delivered," others as "erected" including "shelf-angles—erected," "complete" for "$70,000"; it also provided for deductions aggregating $19,370 from that bid "if alum. wall Handrails are used in halls," and "in lieu of S.S. [stainless steel] on 4th and 5th floors," and for an addition of $29,500 for "Alt. on finishing 4th & 5th floors." Plaintiff received Schmidt's bid on March 26. March 31 at 2 p.m. was the deadline for submission of bids by general contractors. In the forenoon of that date, plaintiff's operations' manager and estimator, Knop, telephoned Schmidt's estimator, Loversky, to inquire about certain other items excluded in Schmidt's bid. Plaintiff then submitted its bid prior to the deadline and was awarded the general contract by Lake County on May 14. Shortly thereafter, about May 27, plaintiff's chief estimator, Ferraro, informed Schmidt's Loversky of that fact and of plaintiff's award

to Schmidt of the subcontract (for $80,130). Ferraro testified that during that conversation Loversky stated that Schmidt was no longer interested in doing that job and that Ferraro told him that plaintiff had used Schmidt's bid in the preparation of its bid for the owner and depended upon it. Loversky testified that when Ferraro told him of the award to Schmidt of that subcontract, Loversky told Ferraro that there had been a two-month lapse since, he, Loversky, had seen the plans and specifications and that he would like to look at them again before he accepted the job. On June 9, plaintiff mailed to Schmidt the printed form of subcontract incorporating the terms of Schmidt's alleged bid. Several days later, on June 16, plaintiff forwarded to the architect the list of its subcontractors for the job, including Schmidt.

Schmidt refused to sign the contract; Loversky testified that the refusal to do so was because of the contract reference to Addendum No. 2, and he "knew of no Addendum No. 2." Plaintiff then completed the job using other subcontractors to perform the work which plaintiff contends was covered by Schmidt's bid.

Following a bench trial and after hearing testimony, the trial court found *inter alia* that Schmidt, prior to making its bid of March 23, 1970, "knew or should have known of the plans and specifications [for the project] and addenda thereto"; that Schmidt reasonably expected, or should have, that plaintiff would rely on Schmidt's bid in preparing its own bid to the County of Lake; that plaintiff justifiably did rely on Schmidt's bid in preparing and submitting its own bid for the construction work for Lake County Nursing Home; and that Schmidt's refusal to perform the work was a material breach of contract as a proximate consequence of which plaintiff sustained damages in the sum of $33,192.42. The trial court entered judgment for that amount and costs.

The principle issue presented to us is (a) whether the doctrine of promissory estoppel is applicable here so as to bind Schmidt to the bid it submitted to the plaintiff, or (b) whether Schmidt's written bid, because it included the sale of materials valued in excess of $500 and did not specify *any quantities* is unenforceable by reason of the provisions of section 2—201(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 2—201(1), which states in effect that a written contract for the sale of goods for the price of $500 or more "is not enforceable ° ° ° beyond the quantity of goods shown in such writing." Schmidt argues that the failure of its bid (a) to specify any quantities of material whatever and (b) to refer to the plans and specifications and to any addenda renders it an insufficient writing to satisfy the Statute of Frauds.

■■ It is of course conceded that the quantities of the various metal products were indicated with particularity in the plans and specifications and addenda covering the construction project for Lake County Nursing

Home. The evidence shows that before preparing its bid to plaintiff Schmidt obtained the plans and specifications from another proposed bidder on the general contract and examined them. Schmidt claims, however, that it did not see the addenda. Nevertheless Schmidt's bid to the plaintiff was dated March 23, more than ten days after Addendum No. 2 was issued. That bid expressly stated that it was made for additions and alterations to the Lake County Nursing Home (which was covered only by those plans and specifications). That bid also included (a) "shelf-angles—erected" and (b) an alternative for the substitution of aluminum handrails for stainless steel handrails. Both of these changes were covered by Addendum No. 2. The trial court heard the testimony of the witnesses and found that Schmidt "knew or should have known of the plans and specifications and addenda thereto." From our examination of the record that finding of the trial court was not without substantial basis.

There is no question but that the doctrine of promissory estoppel is recognized in Illinois. (*S. M. Wilson & Co. v. Prepakt Concrete Co.*, 23 Ill. App. 3d 137, 139.) As stated above Schmidt argues that that doctrine is not applicable to the case at bar because the action is barred by the Statute of Frauds. It should be noted that section 2—205 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 2—205) provides in part as follows:

> "An offer by a merchant to \* \* \* sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or if no time is stated for a reasonable time \* \* \*."

In section 2—206 of that Code, it is provided that "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances," unless otherwise clearly indicated by "language or circumstances." The doctrine of promissory estoppel is also set forth in Restatement of Contracts §90 (1932) as follows:

> "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

In *Wilson* the court summed up the typical relationship in the construction industry between contractor and subcontractor, and the applicable doctrine of promissory estoppel as follows (23 Ill. App. 3d 137, 139-40):

> "An owner puts a particular project up for bid. Before interested general contractors submit bids, they solicit bids from subcontractors and suppliers. There may be and frequently are a large number of such subcontractors and suppliers. Based upon the totals of low subcontractors and supplier bids and upon other considerations, general contractors then submit bids to the owner. Following

a determination of the low bid, the successful general contractor then sends subcontracts to each of the low bidding subcontractors based upon their initial estimates.

It is obvious to this court that a general contractor will suffer financial loss if one or more of the subcontractors whose bids he used as a part of the total bid which procured the job for him refuses to perform after the job is awarded to the general contractor. We have no hesitancy in saying that the theory of promissory estoppel was appropriate in this case and that the trial judge was correct in so ruling."

That statement is equally applicable to the case at bar.

■■ If Schmidt made a mistake in preparing its bid by not including in its computation the cost of using and erecting all the shelf-angles as shown in the plans and specifications and addenda thereto, its mistake did not render its bid void or ineffective. (See *Brown Brothers Manufacturing Co. v. S. H. Harris Co.*, 185 Ill. App. 568.) Schmidt's presentation of its bid and plaintiff's acceptance thereof were in accordance with the custom of the construction industry in Lake County (see sections 1—205 and 2—208(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, pars. 1—205 and 2—208(2)). Schmidt's estimator, Loversky, conceded that fact. He also conceded that, other than his complaint concerning the reference to Addendum No. 2, the form of subcontract which plaintiff submitted to Schmidt contained provisions which are normally expected to be included in a subcontract.

We find nothing in this record to support Schmidt's statement that plaintiff's estimator, Knop, was suspicious of Schmidt's low bid. On the contrary, the record shows that Knop telephoned Schmidt's estimator, Loversky, shortly before the deadline for submission of plaintiff's bid to the owner to verify items in its bid and to determine which items were not included.

Other issues presented are not of sufficient importance to prolong this opinion further. The judgment of the trial court was proper and it is therefore affirmed.

Judgment affirmed.

T. J. MORAN and DIXON, JJ., concur.