**R. S. BENNETT & CO., INC.,
Plaintiff-Appellant,**

v.

**ECONOMY MECHANICAL INDUS-
TRIES, INC., et al., Defendants-
Appellees.**

**No. 79–1128.**

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1979.

Decided Sept. 19, 1979.

Richard M. Calkins, Chicago, Ill., for plaintiff-appellant.

Edwin C. Thomas, Chicago, Ill., for defendants-appellees.

Before PELL and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

PELL, Circuit Judge.

The plaintiff, R.S. Bennett & Co., Inc., appeals from the summary judgment entered in favor of the defendants, Economy Mechanical Industries, Inc. and Sam P. Wallace Company, Inc., on all three counts of its amended complaint. The major issues on appeal are, first, whether the defendants are entitled to the protection of the UCC sales statute of frauds, codified at Ill.Rev. Stat. ch. 26, § 2–201, and, second, whether, under Illinois law, the statute of frauds defense raised here precludes recovery on either a promissory or equitable estoppel theory. Because we are reviewing the propriety of the grant of summary judgment, we view the facts in the light most favorable to the plaintiff and will state the facts of the case as they might reasonably have been found by a trier of facts, notwithstanding disagreement on occasion as to some facts.

The plaintiff's claims arise from the bidding on the O'Hare Water Reclamation Plant project owned by the Metropolitan Sanitary District of Greater Chicago. Three parties bid on the contract. One bidder was a joint venture formed by Paschen Contractors, Inc., Gust K. Newberg Construction Company, and J.S. Groves &

[*] Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

Sons Co. (Paschen joint venture). Another joint venture formed by J.M Foster, Inc., Kenny Construction Company, and Brighton-Krug Construction Company and S.A. Healy Company (Foster joint venture) also bid on the contract. The third bidder was the Blount Brothers Corporation. The plaintiff is a supplier and servicer of sewage pumps and was at this time seeking to be supplier of the large pumps called for by the general contract.

The defendants formed a joint venture for the purpose of obtaining the mechanical subcontract work from the Paschen joint venture. To accomplish this the defendants orally agreed to work with the Paschen joint venture on the pricing of the mechanical work, and if the Paschen joint venture was successful in obtaining the general contract, the defendants would receive a subcontract for a portion of the mechanical work.

Final bids were due May 6, 1976, at 10:30 a. m. On April 30, the plaintiff sent a scope letter on the large pumps required by the contract to the three general contractors bidding on the contract. The letter did not include a price term. On May 5 the plaintiff provided the defendant, who was representing the Paschen joint venture, with a firm price on the pumps of $3,295,000. On the same day, the plaintiff provided the same price to the other two general contractors.

On the morning of May 6, only 45 minutes before the close of the bidding, the plaintiff notified each of the three general contractors of its offer to reduce the pump price substantially on the condition that the contractor promise to give the large pump subcontract to the plaintiff if: 1) the general contractor was awarded the job; 2) the plaintiff's price was used in the bid; and 3) the plaintiff's price was the lowest on large pumps. The defendants made this promise

to the plaintiff and received the plaintiff's new price, which was used in their bid. The defendants' bid was incorporated in the Paschen joint venture general contract bid. The other general contractors likewise agreed to the terms and received the plaintiff's low price. The Paschen joint venture's final bid was $76,000 lower than the Foster joint venture's bid however, and Paschen was therefore awarded the contract. The defendants called the plaintiff at 11:50 a. m. on May 6, to inform it of the successful bid and acknowledged that the plaintiff's bid helped them get the job.

In mid-June the parties met to discuss certain modifications to the credit terms. In July 1976, however, the defendants entered a contract with another pump dealer.

The amended complaint has three counts. The first count charges the defendants with breach of contract. The second and third counts seek relief in promissory and equitable estoppel respectively. We shall describe the bases of these counts when necessary to the discussion of the issues.

1. *Statute of Frauds*

The plaintiff's first basis for recovery is breach of contract. The defendants have raised the Uniform Commercial Code statute of frauds applicable to sales of goods, codified at Ill.Rev.Stat. ch. 26, § 2–201(1) as an affirmative defense to the alleged oral contract.[1] In rebuttal the plaintiff relies on section 2–201(2), which provides that the use by merchants of confirmatory memoranda will, under some circumstances, satisfy the writing requirement of section 2–201(1):

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know of its contents, it satisfies the requirements of subsection (1) against

---

1. Section 2–201(1) provides:
    Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties

and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

such party unless written notice of objection to its contents is given within 10 days after it is received.

The plaintiff has offered two letters to satisfy the section 2–201(2) requirement of a confirmation. It is undisputed that the defendants did not reply to the letters. The district court held that the letters were merely offers and granted summary judgment for the defendants.[2]

The first letter submitted by the plaintiff to satisfy section 2–201(2) was sent on May 6, 1976, after plaintiff heard that the Paschen joint venture had been awarded the contract. It is in form and wording identical to the April 30 general scope letter, except for a price term of "$2,940,000" typed in on the second page. The introductory phrase of the May 6 letter says, "The R.S. Bennett & Company, Inc. is pleased to offer for your consideration its equipment proposal as specified below. . . ." The remainder of the 2½ page letter is a fairly detailed list of terms and specifications, including a notation that "pricing [is] firm for 60 days after bid date."

The other letter relied on by the plaintiffs is dated June 18, 1976. The letter opens with this statement:

The R.S. Bennett & Company, Inc. is pleased to confirm the following modifications and clarifications to our original equipment offering of May 6, 1976 and our meeting of June 15, 1976.

This statement is followed by a description of terms. The terms listed were followed by this statement:

As an alternate to the above terms we also offer for your consideration the following . . . .

The rest of the letter described these alternative terms and closed with an invitation to contact Bennett if more information was needed.

The language of these letters quite clearly indicates that the writings are offers and are not "in confirmation of a contract and sufficient against the sender" within the meaning of the plain language of section 2–201(2). To support this proposition the defendant cites *Alice v. Robett Manufacturing Co.*, 328 F.Supp. 1377 (N.D.Ga.1970), *aff'd per curiam*, 445 F.2d 316 (5th Cir. 1971). In *Alice* the district court granted the defendant seller's motion for summary judgment, ruling that a letter, very similar to the ones here, sent by the defendant to the plaintiff buyer was by its terms merely an offer and not a "writing sufficient to indicate that a contract for sale has been made between the parties" within the meaning of the general statute of frauds set forth in section 2–201(1) of the UCC.

The plaintiff attempts to distinguish *Alice* on the basis that section 2–201(2), relied on here, sets forth a less stringent requirement than 2–201(1), which was applied in *Alice*, arguing:

It is submitted that the district court has confused the requirements of a writing evidencing the contract itself as set forth in § 2–201(1) of the Uniform Commercial Code and a "writing in confirmation" set forth in § 2–201(2).

We cannot accept the plaintiff's interpretation of the Code, however, because the clear purpose of section 2–201(2) is to make memos of a contract that would be binding on the sender under 2–201(1) equally binding on the party receiving the memo in the absence of objection. *See* J. White & R. Summers, Uniform Commercial Code § 2–3 at 46–48 (1972).[3] In this way the drafters

---

**2.** The district court in an alternative holding that even if there had been no statute of frauds bar, no underlying contract was proven, an issue we need not reach, stated in its Order that the defendants used the price quoted from another manufacturer. We disagree, finding ample evidence that the final bid of plaintiff could have been found to have been used in the defendants' bid.

**3.** The plaintiff apparently interprets *Automotive Spares Corp. v. Archer Bearings Co.*, 382 F.Supp. 513 (N.D.Ill.1974), as holding that 2–201(2) sets a lesser standard than § 2–201(1) because the court decided that an "unsigned invoice sufficed for purposes of § 2–201(2)." We have examined the decision, however, and conclude that it is consistent with the rule here. In *Automotive Spares* the court applied the 2–201(1) test for sufficiency in determining whether the writing was sufficient against the sender under § 2–201(2). Contrary to the plaintiff's assertions, the court *did* hold that a signature was required to be sufficient against

of the Code sought to prevent section 2–201(1) from unfairly becoming an instrument of fraud used to bind the signer of a writing against whom enforcement is sought under that section, while the other party remains free for an unlimited period to continue to shop for a better bargain.

Nothing in these letters indicates that the parties have already made a deal or reached an agreement, or in other words, "evidences a contract," *see* Official Code Comment 1 to § 2–201 of the Uniform Commercial Code, so that the plaintiff, as its sender, would lose the defense of the statute of frauds under section 2–201(1). While we recognize that a firm offer is binding on the sender in the sense that a contract might come into existence if the offer is timely accepted before it is withdrawn, we do not regard this as being the sense of the statutory reference to sufficiency which, in our opinion means sufficient as a contract, not as an executory offer. It thus follows that neither of the letters is a "writing in confirmation of the contract sufficient against the sender" within the meaning of section 2–201(2).[4] We therefore affirm the summary judgment in favor of the defendants on the contract claim set forth in the first count of the plaintiff's complaint.

## 2. *Promissory Estoppel*

The second count of the plaintiff's complaint seeks recovery on a theory of promissory estoppel. The doctrine of prom-issory estoppel, as set forth in the Restatement of Contracts § 90 (1932), has been applied by the Illinois courts. *See, e. g., Bank of Marion v. Robert "Chick" Fritz, Inc.,* 57 Ill.2d 120, 311 N.E.2d 138 (1974); *Jenkins & Boller Co. v. Schmidt Iron Works, Inc.,* 36 Ill.App.3d 1044, 344 N.E.2d 275 (1976); *S.M. Wilson & Co. v. Prepakt Concrete Co.,* 23 Ill.App.3d 137, 318 N.E.2d 722 (1974); *Wickstrom v. Vern E. Alden Co.,* 99 Ill.App.2d 254, 240 N.E.2d 401 (1968). The doctrine of promissory estoppel provides that

> [a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Bank of Marion, supra,* 57 Ill.2d at 124, 311 N.E.2d at 140 (quoting Restatement of Contracts § 90). Although the matter of avoidance of injustice might seem to be a question of law, *see Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 698, 133 N.W.2d 267, 275 (1965), the satisfaction of the other elements is a question of fact, *Bank of Marion, supra,* and summary judgment therefore should not be granted if the record shows a genuine issue as to the existence of these elements.

Turning to the evidence before the district court, we conclude that the evidence

---

a sender under § 2–201(2). The issue was whether the defendant's letterhead sufficed as a signature under 2–201(1) and was therefore "sufficient against the sender" under 2–201(2). *Automotive Spares* supports the defendants' position in this case and the plaintiff's reliance on the decision is misplaced.

4. We emphasize that the writing *itself* must satisfy the requirements of sections 2–201(1) and (2). The plaintiff argues that, despite the clear meaning of the language in the letter, summary judgment was improper, because

> evidence of intent in sending a particular document and the understanding of the defendant upon receiving it are substantial questions of fact which will determine whether the requirements of § 2–201(2) have been satisfied to remove the bar of the statute of frauds.

We cannot agree, however, with the plaintiff's premise that this evidence of intent is admissible. To permit evidence on this issue would result in the anomalous sequence of offering proof of an oral contract to explain the writing, thus removing the bar of the statute of frauds so the plaintiff can again offer proof of the oral contract. The purpose of the statute is to afford "the trier of fact something reliable to go on in addition to the mere oral testimony of the plaintiff." J. White & R. Summers, Uniform Commercial Code § 2–4 at 53. To permit the plaintiff to bolster the written evidence with oral testimony (in fact virtually to negate its clear meaning in this case) would strip the statute of its essential, protective purpose. We therefore decline to reverse the summary judgment on the basis of any questions created by the existence of this evidence.

is sufficient to create a genuine issue as to material facts supporting the plaintiff's theory of promissory estoppel. Briefly summarized, there is evidence from which the trier of fact could find the following. The defendants promised to purchase the pumps from the plaintiff if they used the plaintiff's bid price and if they were awarded the mechanical subcontract. In reliance on this promise, the plaintiff disclosed its new low bid price. As a result of the plaintiff's $650,000 price reduction, the Paschen joint venture was the low bidder on the general contract by $76,000. The other general contractors were willing to carry out their promise to purchase from the plaintiff if they had received the contract, but as a result of the defendants' conduct plaintiff was denied the pump contract which it would have been awarded by either of the other two general contractors. In connection with this latter point, as we read the depositions, the lower final bid identically submitted to all three contractors subject to the same provisos could be found to have permitted the Paschen group to have maintained its relative low position which could not have been accomplished without the final cut in price offered by the plaintiff.

Of course, some of this evidence is disputed but it is material evidence and the plaintiff should have had the opportunity to prove its theory. Whether or not it can do so is another question, and one on which we express no opinion.

The defendant also argues that the plaintiff's theory of detriment is conjectural, because it is "absurd" to believe that a difference of $650,000 in pump price would have affected the outcome of the bidding on a $114,000,000 contract. We believe that a question of fact on the issue of detrimental reliance is created, however, by evidence that the defendants reduced the pump price in their bid by $650,000 after the communication of the plaintiff's bid. From this

evidence alone, there is an inference sufficient to create a question of fact that the defendants used the plaintiff's lower price. In addition the evidence of an approximate difference of only $75,000 between the Foster joint venture's final bid and the Paschen joint venture's final bid indicates that without the $650,000 decrease in the defendant's bid, the Foster joint venture would have been awarded the contract instead. We hold that the evidence is not so speculative that the plaintiff should be denied the opportunity to present all of its evidence at a trial.

■ The defendants urge most vigorously, however, that Illinois law precludes recovery on a promissory estoppel theory when the defendant successfully defends on the basis of the statute of frauds. We have examined the cases cited by both parties and conclude that, although the issue is not without some difficulty, the Illinois Supreme Court would permit the plaintiff to seek recovery on a promissory estoppel theory.

■ To support their statute of frauds argument, the defendants cite *Ozier v. Haines,* 411 Ill. 160, 103 N.E.2d 485 (1952), and *Sinclair v. Sullivan Chevrolet Co.,* 31 Ill.2d 507, 202 N.E.2d 516 (1964). In these decisions, the Illinois Supreme Court ruled that a plaintiff must base recovery on an equitable estoppel theory to withstand a defense based on the applicable statute of frauds. "Equitable estoppel" as defined in *Ozier* and *Sinclair* is similar to promissory estoppel in all but one element: the gravamen of equitable estoppel is a material misrepresentation of past or present circumstances. *See Sinclair, supra,* 31 Ill.2d at 510, 202 N.E.2d at 518. *See generally* J. Calamari & J. Perillo, Contracts § 166 (1970). Promissory estoppel, in contrast, merely requires the allegation of a promise.[5]

---

5. We recognize that in recent years the distinction between these concepts has faded somewhat, *see, e. g., Wilhoite v. Fastenware, Inc.,* 354 F.Supp. 856 (N.D.Ill.1973); *Nugent v. American Louver Co.,* 393 F.Supp. 642 (N.D.Ill. 1975) (holding that plaintiff may seek recovery on equitable estoppel theory when alleging a false statement of intent used to accomplish a fraud).

Despite these decisions by the Illinois Supreme Court, at least one Illinois Appellate Court in recent years has permitted a plaintiff to assert promissory estoppel notwithstanding that recovery on a contract theory was barred by the same UCC statute of frauds that we have applied here. *Jenkins & Boller Co. v. Schmidt Iron Works, Inc.,* 36 Ill.App.3d 1044, 344 N.E.2d 275 (1976). Although the Appellate Court in *Jenkins* offers little explanation for its departure from the rule of the earlier Illinois cases, we think it is sound in light of changes since *Ozier* in the applicable statute of frauds and in light of the more recent general emergence of the doctrinal basis of promissory estoppel.

The scope of the statute of frauds applicable to sales of goods has narrowed considerably since *Ozier,* which concerned the sale of goods, was decided.[6] Because the UCC statute of frauds, Ill.Rev.Stat. ch. 26, § 2–201, forbids the use of the statute as a defense if the existence of an oral contract is admitted, it is less likely that the bar of the statute will be available when a contract actually exists,[7] and relief in promissory estoppel will be unnecessary. Thus, the possibility feared by the Illinois Supreme Court in *Ozier,* that promissory estoppel would "render the statute [of frauds] entirely nugatory" *see* 411 Ill. at 163, 103 N.E.2d at 487, is so much more remote that we do not think that court would consider a universal bar to recovery on promissory estoppel necessary to preserve the purpose of the statute. Furthermore, promissory estoppel has an element of restraint built into it in the requisite showing that relief be necessary to avoid injustice. *See Bank of Marion, supra.*[8] Similarly the lack of the formality inherent in situations where the statute will be a defense will affect the reasonableness of the plaintiff's reliance on the promise. *See generally* J. Calamari & J. Perillo, Contracts § 327 (1970). Here the time pressures involved in the bidding were not conducive to formal written agreements between the parties, and a question of fact is created as to whether defendant's oral promise was a reasonable basis for reliance.

We conclude that the applicability of *Ozier* and *Sullivan* to the sales of goods has eroded sufficiently that the Illinois Supreme Court would no longer consider the statute of frauds as a complete bar to recovery on an estoppel theory.

The third count of the plaintiff's amended complaint seeks recovery on the basis of equitable estoppel, alleging that

> [a]t no time did Economy-Wallace intend to purchase the pumps in question from the plaintiff, but made misrepresentations in order to gain important information concerning the prices going to its competitors also bidding. . . .

Because we have held that the promise alone is a sufficient basis for estoppel, re-

---

**6.** In contrast, *Sullivan* involved an employment contract and applied the portion of the general statute of frauds, codified at Ill.Rev.Stat. ch. 59, § 1, concerning agreements not to be performed within the space of one year. This section has not changed significantly since the decision.

**7.** *Compare* Official Code Comment No. 7 to section 2–201 ("Under this section it is no longer possible to admit the contract in court and still treat the Statute as a defense . . .") with *Ozier, supra,* 411 Ill. at 163, 103 N.E.2d at 487 ("the moral wrong of refusing to be bound by an agreement because it does not comply with the Statute of Frauds, does not of itself authorize the application of the doctrine of estoppel, for the breach of a promise which the law does not regard as binding is not a fraud.")

**8.** The Restatement (Second) of Contracts § 217A does not treat the statute of frauds defense as a complete bar to recovery in estoppel, preferring to rely instead on the showing of injustice preliminary to recovery in estoppel as a source of restraint:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

We add only the observation on this point, that if plaintiff can establish the factual element for promissory estoppel, a strong case would seem to be made for the avoidance of injustice on a showing of a loss of profits in excess of half a million dollars.

gardless of the statute of frauds, the plaintiff may well decide to pursue only the easier route of promissory estoppel on remand. Nevertheless, we do not agree with the district court that there is a clear failure to demonstrate any misrepresentation or concealment of material facts, and if the plaintiff chooses to do so it may also attempt to undertake the more difficult burden of showing equitable estoppel.

For the above reasons the judgment of the district court is affirmed as to Count I and reversed as to Counts II and III of the plaintiff's amended complaint.

AFFIRMED IN PART; REVERSED IN PART.