**COLUMBUS TRADE EXCHANGE, INC., Plaintiff,**

v.

**AMCA INTERNATIONAL CORP., Defendant.**

**No. C2–86–696.**

United States District Court, S.D. Ohio, E.D.

April 12, 1991.

Craig Alan Smith and Kenneth Andrew Gamble, Columbus, Ohio, for plaintiff.

Thomas Earl Palmer, Columbus, Ohio, for defendant.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the Defendant, AMCA International Corp.'s ("AMCA" or "Varco–Pruden", a unit of AMCA International Corp.) motion for partial summary judgment as to Counts I, II, and III of Plaintiff, Columbus Trade Exchange, Inc.'s ("Tradecorp") Complaint. The plaintiff has filed a Memorandum Contra, to which the defendant has filed a Reply Memorandum. Count I of the Complaint states breach of contract as the cause of action, while Count II alleges Promissory Estoppel and Count III contends Equitable Estoppel. Plaintiff alleges jurisdiction arises under 28 U.S.C. § 1332.

## FACTS

This entire matter emanates from a meeting held on May 8, 1985, in Memphis,

Tennessee between representative of the plaintiff, Tradecorp, and the defendant, AMCA or Varco–Pruden. In attendance at the meeting were Art Goehring, President and owner of Tradecorp and John Fairless, an employee of Tradecorp, coupled with John Sullivan, Senior Vice President of Administration of Varco–Pruden, James W. Drake, Vice President of Sales for Varco–Pruden and Dean Grant, then President of Varco–Pruden.

By way of background, Tradecorp is in the business of facilitating barter transactions between its various clients. Essentially, this is done by creating a network of clients, determining each client's wants and needs, and determining what services or products the client has to barter in exchange for their specific wants and needs. Tradecorp then attempts to arrange compatible exchanges between clients. In turn, Tradecorp then receives a commission for arranging these barter transactions.

AMCA is a Canadian corporation headquartered in Hanover, New Hampshire. AMCA International has a number of divisions, including AMCA Buildings. Varco–Pruden Buildings is a division of AMCA Buildings, and is in the business of manufacturing preengineered steel buildings.

At the May 8, 1985 meeting, the representatives from Tradecorp proposed a barter transaction to the Varco–Pruden representatives wherein Varco–Pruden would provide steel to Tradecorp in exchange for "trade credits"[1] which could be redeemed at a later date for goods or services in Tradecorp's inventory. Tradecorp was interested in dealing with Varco–Pruden because Tradecorp wished to build a steel structure to house their operations, and Varco–Pruden could supply the necessary steel materials. As part of the proposal, Goehring and Fairless explained to Drake, Sullivan, and Grant the types of goods and services that Tradecorp could supply. Plaintiff Tradecorp contends that Goehring and Fairless "left the meeting convinced that a deal had been struck, whereby Var-

co–Pruden would supply the materials necessary for Tradecorp's building in return for Tradecorp's agreement to investigate areas where Varco–Pruden could spend trade credits it received in exchange for the materials." Plaintiff's Memorandum in Opposition at p. 6 (citing Goehring deposition at p. 22, and Fairless deposition at p. 23).

It is undisputed that no document, contract, memorandum, or any other writing of any kind was made at the May 8th meeting. However, a letter date May 10, 1985, was sent from Goehring to Drake. The letter provided as follows:

Jim Drake

Varco–Pruden Buildings

5100 Popular, Suite 2121

Memphis, Tenn. 38137

Dear Jim:

Thanks again for your time on Wednesday. We enjoyed learning about the Building Business and also meeting Dean and John.

As per our understanding we will proceed on a Pilot Basis for our facility and communicate with Owen Aman in your Wisconsin operation. John Fairless will be in touch with him developing a list of supplies for his needed products or services.

To determine the potential scope of our arrangement we would like to schedule some time in the near future to unfold the trade possibilities. This would be a session with the people responsible for buying your goods and services.

The contact at the Mohawk Rubber plant in Gunnersville, Alabama is Dick Bailey. His telephone number is 205–582–3242. We have notified him that someone from Varco–Pruden would be in touch about the project. Our corporate reference at Mohawk is Terry Deane.

Looking forward to a good working relationship.

Respectfully,

/S/

Art Goehring

---

1. "Trade credits" are given on a dollar for dollar basis, so that one dollar of cash value is equal to one dollar trade credit value. These trade credits are only of value in purchasing goods or services from other clients of Tradecorp.

This letter is important because it is based upon this letter that the plaintiff contends an enforceable agreement existed between the parties. Varco–Pruden did not respond to the letter. The Court will now turn its attention to the standard to be applied to the instant motions.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) citing *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations,* 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *citing, Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553, (quoting Fed.R.Civ.P. 1); *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## ANALYSIS

### I. SUMMARY JUDGMENT ON COUNT I; BREACH OF CONTRACT

Defendant Varco–Pruden has moved for summary judgment as to Count I on the basis that the plaintiff's breach of contract claim is barred by the Statute of Frauds, Ohio Rev.Code § 1302.04. The Ohio Revised Code section is the state's adoption of Uniform Commercial Code section 2–201, and it governs the judicial enforceability of a contract for the sale of goods for the price of $500 or more. Ohio Rev.Code

§ 1302.04(A) (U.C.C. § 2–201(1)) provides in relevant part as follows:

(A) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

The plaintiff argues that although there was no formal written contract in this case and thus Ohio's Statute of Frauds code section is applicable, there are likewise two applicable exceptions to the Statute of Frauds, to wit: the "Written Confirmation of the Contract" exception, Ohio Rev.Code § 1302.04(B) (U.C.C. § 2–201(2)) [2]; and the "Partial Performance" exception, Ohio Rev.Code § 1302.04(C)(3) (U.C.C. § 2–201(3)(C)) [3]. Based on these exceptions, the plaintiff argues that summary judgment is not appropriate as to Count I.

### A. *Written Confirmation*

■ The plaintiff offers as written confirmation the letter provided above from Goehring to Drake. Official Comment 1, which follows the Ohio Revised Code section, enlightens the Court as to what the writing, or in this case the letter, must include in order to satisfy the statute of frauds exception. The Comment states as follows:

1. The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral

evidence rests on a real transaction. It may be written in lead pencil on a scratch pad. It need not indicate which party is the buyer and which the seller. The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted.

\* \* \* \* \* \*

Only three definite and invariable requirements as to the first memorandum are made by this division. First, it must evidence a contract for the sale of goods; second, it must be "signed," a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity.

In attempting to persuade this Court that these requirements were fulfilled, the plaintiff relies on two cases in which writings were considered sufficient to create an issue of fact as to whether an enforceable oral contract existed. The first case cited by the plaintiff is *Thomson Printing Machinery Co. v. B.F. Goodrich*, 714 F.2d 744 (7th Cir.1983) (applying Ohio law). However, that case is clearly distinguishable in that the confirmation letter was in the form of a purchase order that stated the exact quantity of merchandise being purchased, the price, the deposit amount and a check for the partial amount. Furthermore, unlike the instant case, the ultimate issue in that case was whether the purchase order and the check were ever received.

The second case relied upon by the plaintiff is *Alarm Device Manufacturing Co. v. Arnold Industries, Inc.*, 65 Ohio App.2d

---

**2.** Ohio Rev.Code § 1302.04(B) provides as follows:

(B) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirement of division (A) of this section against such party unless written notice of the objection to its contents is given within ten days after it is received.

**3.** Ohio Rev.Code § 1302.04(C)(3) provides as follows:

(C) A contract which does not satisfy the requirement of division (A) of this section but which is valid in other respects is enforceable:

\* \* \* \* \* \*

(3) with respect to goods for which payment has been received and accepted in accordance with section 1302.64 [What constitutes acceptance of goods] of the Revised Code.

256, 417 N.E.2d 1284 (1979). That case is likewise distinguishable because the proffered letter contained "letterhead, quantity designation, and price terms." *Id.* at 261, 417 N.E.2d 1284.

The letter in the instant matter, offered as a "written confirmation", is at best a preliminary correspondence regarding the groundwork that had been established in an effort to potentially reach an agreement at a later date. The letter is completely devoid of any quantity term, as required by Ohio Rev.Code § 1302.04, and even when liberally construed the Court is unable to find that the letter evidences a contract for the sale of goods. Therefore, the plaintiff's argument of written confirmation is not well taken. The Court will now turn its attention to the second argument; that there had been partial performance.

### B. *Partial Performance*

■ The second argument of the plaintiff for denying the defendant's motion for partial summary judgment, based upon the statute of frauds, is the "partial performance" exception found in Ohio Rev.Code § 1302.04(C)(3) (U.C.C. 2–201(3)(C)). See, footnote 3, *supra.* The plaintiff cites three cases in support of the "partial performance" argument; *American Bronze Corp. v. Streamway Products,* 8 Ohio App.3d 223, 456 N.E.2d 1295 (1982), *Pro Arts Inc. v. K–Mart Corp.,* 580 F.Supp. 1073 (N.D. Ohio 1984), and *Pindell v. Brandstutter,* 9 Ohio Misc.2d 18, 459 N.E.2d 1330 (1983). All three of the cases involve relevant facts not found in this case. For example, in *Pindell v. Brandstutter,* the parties made an oral agreement to buy and pay for beef. The oral agreement had been partially performed in that beef had been delivered and partial payment had been made. For good reason, Ohio law and the "partial perform-

ance" exception will not permit one party to argue that no contract existed when their own actions speak volumes to the contrary. Such is not the circumstance in the matter before this Court. There had been no delivery of goods, no transfer of trade credits, nor any other action upon which the Court can reasonably conclude that there had been a meeting of the minds between the parties that resulted in an agreement. Therefore, the plaintiff's "partial performance" argument is also not well taken.

Given the plaintiff's inability to demonstrate an exception to Ohio's Statute of Frauds section, the defendant's motion for partial summary judgment as to Count One is hereby GRANTED.

## II. SUMMARY JUDGMENT ON COUNT II; PROMISSORY ESTOPPEL [4]

■ The defendant has further moved for partial summary judgment as it relates to Count II of the original Complaint. The defendant argues that the plaintiff's claim for promissory estoppel is insufficient as a matter of law because Ohio law does not permit the use of promissory estoppel to circumvent the Statute of Frauds. The plaintiff argues in response that summary judgment is not appropriate because Ohio law recognizes that a claim of promissory estoppel can override the Statute of Frauds.

Upon review of the cases cited by the parties and after exhaustive research conducted by this Court, it is clear that this issue, as it relates to the interpretation of Ohio Rev.Code § 1302.04 (U.C.C. 2–201), is one of first impression.[5] Ohio's Revised Code contains three separate Statutes of Frauds; Ohio Rev.Code § 1335.04, which mandates a writing for real estate transac-

---

**4.** It should be noted that the count in the original complaint concerning promissory estoppel is Count Three and the count in the original complaint concerning equitable estoppel is Count Two, however, the parties appear to have switched them in their respective motions. Therefore, the Court, in attempt to minimize confusion, will address the promissory estoppel claim as Count Two, and the equitable estoppel claim as Count Three.

**5.** See *Worrell v. Multipress, Inc.,* 45 Ohio St.3d 241, 543 N.E.2d 1277 (1989), wherein the Ohio Supreme Court reversed on other grounds and stated, "[w]e therefore need not reach the question of whether promissory estoppel removes this transaction from the Statute of Frauds' writing requirement.

tions [6]; Ohio Rev.Code § 1335.05, a general statute of frauds code section [7]; and Ohio Rev.Code § 1302.04, the relevant statute for our purposes and addresses the requirement of a written contract for the sale of goods in the amount of five hundred dollars or more.[8]

"Promissory Estoppel" is defined in the Restatement (Second) of Contracts § 90 as follows:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

The doctrines of promissory and equitable estoppel developed from the concept of equity and the ancient maxim, "he who has committed inequity shall not have equity."

Annotation, *Comment Note.—Promissory Estoppel as Basis for Avoidance of Statute of Frauds,* 56 A.L.R.3d 1037 (1974 and Supp.1990). The purpose of the doctrine's evolution was to prevent a person from denying or asserting anything that by that person's own actions, words, representations or deeds was contrary to the truth. *See* Am.Jur.2d, *Estoppel and Waiver* § 1 et seq.

The statute of frauds was designed as the weapon of the written law to prevent fraud, while the doctrine of estoppel is that of the unwritten law to prevent like evil. Each is effective in its appropriate field; both are essential to prevent and redress wrongs, and neither should be allowed to dominate the other. This Court is therefore called upon to perform a balancing test and analysis with relation to the two doctrines. With that in mind, there are three views held by the various courts of

---

6. **§ 1335.04 Interest in land to be granted in writing.**

No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.

7. **§ 1335.05 Certain agreements to be in writing.**

No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

No action shall be brought to charge a person licensed by Chapter 4731. of the Revised Code to practice medicine or surgery, or podiatric medicine and surgery in this state, upon any promise or agreement relating to a medical prognosis unless the promise or agreement is in writing and signed by the party to be charged therewith.

8. The code section provides in relevant part as follows:

**§ 1302.04 (U.C.C. 2–201) Formal requirements; statute of frauds.**

(A) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker ...

(C) A contract which does not satisfy the requirements of division (A) of this section but which is valid in other respects is enforceable:

(1) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(2) if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(3) with respect to goods for which payment has been made and accepted or which have been received and accepted in accordance with section 1302.64 of the Revised Code.

this country with regard to this precise issue.

Some courts have found that promissory estoppel can be used to avoid the statute of frauds as it relates to U.C.C. § 2–201[9]; other courts have found that promissory estoppel does not avoid statute of frauds as it relates to U.C.C. § 2–201[10]; and a few courts have found that promissory estoppel avoids the statute of frauds only where promisee relies on a promise to make a writing or a representation that the writing requirement has been met.[11] Although the courts' decisions can be easily categorized, the analysis and methodology applied to reach the decisions greatly varies.

Article 2 of the Uniform Commercial Code, specifically, U.C.C. § 2–201, as provided in Ohio Rev.Code § 1302.04, address-es the Statute of Frauds requirements and sets forth several exceptions to the strict requirement that a writing exist to reflect the agreement. The code section does not, however, under its express terms, permit the circumvention of the statute of frauds through the application of the doctrine of promissory estoppel. The prevailing arguments for the circumvention have relied upon the interrelationship between U.C.C. § 2–201 and U.C.C. § 1–103. Section 1–103[12] provides that the principle of estoppel, *inter alia,* is available with relationship to all Code sections unless the modified Code section provides otherwise. Section 2–201 is the modified code section and it does not address estoppel one way or the other, therefore, the parties have argued, § 1–103 can modify § 2–201 thereby implicitly permitting the estoppel argument.

**9.** *See, e.g., Ralston Purina Co. v. McCollum,* 271 Ark. 840, 611 S.W.2d 201 (App.1981); *Allied Grape Growers v. Bronco Wine Co.,* 203 Cal. App.3d 432, 249 Cal.Rptr. 872 (5th Dist.1988); *Jenkins & Boller Co. v. Schmidt Iron Works, Inc.,* 36 Ill.App.3d 1044, 344 N.E.2d 275 (1976); *R.S. Bennett & Co. v. Economy Mechanical Industries, Inc.,* 606 F.2d 182 (7th Cir.1979) (applying Illinois law); *Warder & Lee Elevator, Inc. v. Britten,* 274 N.W.2d 339 (Iowa 1979); *Meylor v. Brown,* 281 N.W.2d 632 (Iowa 1979); *Decatur Cooperative Asso. v. Urban,* 219 Kan. 171, 547 P.2d 323 (1976); *Fairway Machinery Sales Co. v. Continental Motor Corp.,* 40 Mich.App. 270, 198 N.W.2d 757 (1972); *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207 (8th Cir.1976) (applying Missouri law); *Esquire Radio & Electronics, Inc. v. Montgomery Ward & Co.,* 804 F.2d 787 (2d Cir.1986); *Edward Joy Co. v. Noise Control Products, Inc.,* 111 Misc.2d 64, 443 N.Y.S.2d 361 (1981); *Allen M. Campbell Co., General Contractors, Inc. v. Virginia Metal Industries, Inc.,* 708 F.2d 930 (4th Cir.1983) (applying North Carolina law); *Jamestown Terminal Elevator, Inc. v. Hieb,* 246 N.W.2d 736 (N.D. 1976); *Minnesota Farm Bureau Marketing Corp. v. North Dakota Agricultural Marketing Asso.,* 563 F.2d 906 (8th Cir.1977) (applying North Dakota law); *Darrow v. Spencer,* 581 P.2d 1309 (Okl.1978); *Potter v. Hatter Farms, Inc.,* 56 Or. App. 254, 641 P.2d 628 (1982); *Atlantic Wholesale Co. v. Solondz,* 283 S.C. 36, 320 S.E.2d 720 (App.1984); and *Farmers Elevator Co. v. Lyle,* 90 S.D. 86, 238 N.W.2d 290 (1976).

**10.** *See, e.g., Cox v. Cox,* 292 Ala. 106, 289 So.2d 609 (1974); *C.G. Campbell & Son, Inc. v. Comdeg. Corp.,* 586 S.W.2d 40 (Ky.App.1979); *Anderson Constr. Co. v. Lyon Metal Products, Inc.,* 370 So.2d 935 (Miss.1979); *FMC Financial Corp. v. Reed,* 592 F.2d 238 (5th Cir.1979) (ap-plying Mississippi law); *Ivey's Plumbing & Electric Co. v. Petrochem Maintenance, Inc.,* 463 F.Supp. 543 (N.D.Miss.1978) (applying Mississippi law); *Farmland Service Coop, Inc. v. Klein,* 196 Neb. 538, 244 N.W.2d 86 (1976); *Schott Grain Co. v. Rasmussen,* 197 Neb. 267, 248 N.W.2d 42 (1976); *Golden Plain Feedlot, Inc. v. Great Western Sugar Co.,* 588 F.Supp. 985 (1984) (applying Nebraska and South Dakota law); *Wilke v. Holdredge Cooperative Equity Exchange,* 200 Neb. 803, 265 N.W.2d 672 (1978); *McDabco, Inc. v. Chet Adams Co.,* 548 F.Supp. 456 (D.S.C.1982) (applying South Carolina law); and *Lige Dickson Co. v. Union Oil Co.,* 96 Wash.2d 291, 635 P.2d 103 (1981).

**11.** *See, e.g., Tiffany, Inc. v. W.M.K. Transit Mix, Inc.,* 16 Ariz.App. 415, 493 P.2d 1220 (1972); *C.R. Fedrick, Inc. v. Borg–Warner Corp.,* 552 F.2d 852 (9th Cir.1977) (applying California law); *Distribu–Dor, Inc. v. Karadanis,* 11 Cal. App.3d 463, 90 Cal.Rptr. 231 (1970); *Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 230 N.W.2d 588 (1975); *H. Molsen & Co. v. Hicks,* 550 S.W.2d 354 (Tex.Civ.App. 8th Dist.1977); and *Rockland Industrial, Inc. v. Frank Kasmir Associates,* 470 F.Supp. 1176 (N.D.Tex.1979) (ap-plying Texas law).

**12.** U.C.C. § 1–103 provides as follows:

**UCC § 1–103. Supplementary General Principles of Law Applicable.**

Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, *estoppel,* fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Similarly, successful arguments have been made that U.C.C. § 1–203, which imposes a general obligation of good faith, acts to permit the principle of estoppel to circumvent the Statute of Frauds requirement.

A third argument has been made for the circumvention of the Statute of Frauds pursuant to the Restatement of Contracts. The Restatement of Contracts, Second § 139(1) adopts the rule that a promise which is reasonably expected by the promisor to be relied upon by the promisee or a third person and which actually induces reliance is enforceable, to the extent necessary to avoid manifest injustice, notwithstanding the statute of frauds. In Annotation, *Promissory Estoppel as Basis for Avoidance of UCC Statute of Frauds (UCC § 2–201)*, 29 A.L.R.4th 1006 (1984 and Supp.1990), the author notes:

> Comment a to the Restatement rule states that § 139 is intended to apply to promises supported by consideration, and is therefore complementary to § 90, which dispenses with the requirement of consideration in certain cases upon the promisee's reasonable reliance. The factors relevant to the determination whether injustice can be avoided only by the enforcement of the promise, according to the Restatement of Contracts, Second § 139(2), include [1] the availability and adequacy of other remedies, [2] the character of the reliance in relation to the remedy, [3] the extent to which the terms of the agreement are corroborated by promisee's reliance, and [4] the reasonableness and foreseeability of the reliance.

As previously mentioned, the Courts of the State of Ohio and the Federal Courts, interpreting Ohio law, have yet to confront these arguments and provide rulings. Furthermore, the plaintiff fails to set forth these or similar arguments. Instead, the plaintiff relies upon case law which provides some limited guidance yet the cases cited are clearly distinguishable from the issues facing this Court. The defendant argues the position that the Statute of Frauds cannot be circumvented by the principle of promissory estoppel. The defendant, likewise, supports this position by citing cases that are limited in their applicability.

To support their proposition, that the statute of frauds cannot be circumvented by the use of a promissory estoppel argument, the defendant cites to the case of *Seale v. Citizens Savings & Loan Ass'n*, 806 F.2d 99 (6th Cir.1986). In *Seale* the Sixth Circuit, in interpreting Ohio law, held that the doctrine of promissory estoppel does not apply to statute of frauds cases involving *real estate*, specifically Ohio Revised Code § 1335.05. The Court in making its decision performed a thorough analysis of the doctrine of promissory estoppel to statute of frauds cases, however, that Court's specific interest was the applicability of the doctrine in cases involving real estate and not the sale of goods as governed by the Uniform Commercial Code, as in the instant case. In fact, the *Seale* court distinguished the Ohio Court of Appeals case of *Gathagan v. Firestone Tire & Rubber Co.*, 23 Ohio App.3d 16, 490 N.E.2d 923 (1985) citing similar reasons.

In *Gathagan*, the appellate court found that in the context of an employment agreement the doctrine of promissory estoppel may be utilized to circumvent the statute of frauds bar. The *Seale* Court distinguished the cases based upon the fact that *Gathagan* addressed an employment agreement while their case dealt with real estate. The court stated as follows:

> We do not find this Court of Appeals decision to be persuasive authority for the proposition that the Supreme Court of Ohio would allow promissory estoppel to defeat the statute of frauds in a real estate context ... *Gathagan* involved a breach of an oral contract for employment for two years. We are not convinced that the Ohio courts would treat employment contracts and real estate transactions as co-extensive, since the latter implicates interests that are generally regarded as more deserving of protection.

As *Seale* pointed out, a real estate transaction is one which necessitates a writing "to

ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity." *Seale*, at 104, (*quoting North Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 348, 476 N.E.2d 388 (1984). The *Seale* decision went to great extent to emphasis the importance of the statute of frauds in a real estate context and therefore, provides this Court with little guidance.[13]

For purposes of this Court's ruling, we will look to the Restatement of Contracts, Second § 139 for guidance. This is the only analysis which will properly consider the fact that this involves an issue of a contract for the sale of goods and not an issue of real estate or employment. Furthermore, the Restatement of Contracts, Second permits this Court, as it should, to consider the reasonability and the foreseeability of reliance of the parties, and the fact that the parties involved are individuals educated in business practices. Therefore, the case must be viewed in the context of two businesses in an arms length bargaining position attempting to create an agreement beneficial to their respective businesses.[14]

Under the circumstances of this case, the plaintiffs have failed to show to this Court any indicia of the commission of inequity to warrant this Court from forestalling the defendant's right to require such an important matter be reduced to a signed writing. To find otherwise does irreparable harm to the statute of fraud and renders it nugatory upon an argument or allegation of promissory estoppel. This Court can certainly imagine an instance where the oral representations of a party could give rise to a promissory estoppel argument that would circumvent the statute of frauds, however, in order to permit that, there must be something the plaintiff can offer the Court that reflects that a manifest inequity will result unless the statute of frauds is bypassed. The plaintiff has failed to make such an offering.

Relating a required proffer back to a Rule 56 motion for summary judgment, the party must present a sufficient disagreement of facts to require submission to a jury. As previously stated, the claim of promissory estoppel must be supported by more than a mere scintilla of evidence— there must be evidence upon which a jury could reasonably find for the plaintiff. In other words, the plaintiffs must show a that genuine issues of material fact exist concerning whether a promise was made, whether the representatives of Varco–Pruden reasonably expected the alleged promise to be relied upon by Tradecorp, and whether the circumvention is necessary to avoid a manifest injustice. This Court is of the opinion that the plaintiff has failed to meet this limited burden, and that reasonable minds could come to but one conclu-

---

**13.** Likewise, the Court distinguishes *D & S Coal Company, Inc. v. USX Corporation*, 678 F.Supp. 1318 (E.D.Tenn.1988) (Federal District Court interpreting Tennessee law with relationship to a real estate matter); and *R. Renaissance, Inc. v. Rohm & Haas Company*, 674 F.Supp. 591 (S.D. Ohio 1987) (The Federal District Court failed to determine whether the applicable statute of frauds code section to applied was O.R.C. § 1302.04 or § 1335.05, nonetheless, finding that a related claim for promissory estoppel may survive, basing its decision on all cases interpreting O.R.C. § 1335.05, which is not the applicable code section for the instant matter).

**14.** The Uniform Commercial Code consistently makes distinctions between the casual or inexperienced buyer and seller and the interaction "between merchants". At § 2–104(1), the Code defines a "merchant" as follows:

a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Section 2–104(3) goes on to define a transaction "between merchants" for purposes of the Uniform Commercial Code as being "any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants".

Sections 2–201(2), 2–205, 2–207 and 2–209, which deal with the Statute of Frauds, firm offers, confirmatory memoranda and modification, contain the higher standard of conduct applied to a merchant based upon their presumed higher degree of familiarity with typical business practices.

sion, that being adverse to the plaintiff's position.

In reviewing the instant matter, there clearly appears to be an issue as to whether a promise was made; that is an issue for a jury to decide. Specifically, a jury must determine whether the alleged representations of the defendant amounted to a promise. However, the alleged reliance by the plaintiff appears to not be reasonable and possibly not founded in the simple preliminary discussions held between the parties. Likewise, it would not appear that the facts and issues laid before this Court reflect the potential for injustice to be averted only by the enforcement of the alleged agreement the plaintiff state exists.

It should be further noted that this Court believes that two businesses represented by experienced businesspersons should be held to a higher standard in requiring compliance with the statute of frauds. As the facts reflect, the plaintiff is constantly in contact with a variety of clients with whom they apparently contract for good and/or services in exchange for trade credits or they simply act as liaison between other businesses interested in being involved in a barter transaction. With such extensive experience, both parties must be called upon to exercise a greater degree of care in their business practices than to simply seal an alleged deal with a handshake. Such lax practices are precisely what the statute of frauds serves to minimize. The only circumvention in such a instance involving astute businesspersons should involve that infrequent instance where the Court is required to exercise its powers to mandate equity because the statute of frauds would

simply serve to perpetuate an inequity. The instant matter is not such a case.

The depositions of the two representatives of Tradecorp, Art Goehring and John Fairless, are particularly telling. When asked during the deposition, "[W]hat did you believe Tradecorp was obligated to do after the May 8th meeting?"; Goehring replied, "To help Varco–Pruden spend the credits *if a building deal was made.*" Deposition of Art Goehring at p. 23 (emphasis added).

The attorney then questioned, "When you say 'if a building deal was made,' is it your testimony a building deal was made at this meeting?" Goehring deposition at 23.

Goehring responded, "An agreement was struck at this meeting. A contract for the building itself was not signed at that point."

Goehring's response to the inquiry concerning his statement of "if a building deal was made" gives the appearance that an agreement had not actually been reached. It would instead appear as though a preliminary ground work had been laid contingent upon Varco–Pruden finding, with Tradecorp's help, a use for the trade credits they were to receive in exchange for supplying building materials. This puts directly into issue the reasonability of the plaintiff's reliance.

Furthermore, it is apparent from the depositions that Tradecorp typically uses contracts when striking agreements with businesses that are willing to barter their goods and/or services for another business' goods and/or services.[15] Yet the plaintiff wants the Court to believe that for "pilot projects" no contracts are used or that an

---

**15.** In Goehring's deposition the following exchange took place:

Q. (Attorney for Defendant) This is Exhibit 4. Do you recognize it?

A. (Goehring) That's a sample agreement.

Q. Was one of these sample agreements in the packet of information that you gave to the AMCA people at this meeting?

A. I believe so.

Q. It's called a Memorandum of Agreement, [was a] Memorandum of Agreement completed and signed by AMCA and Tradecorp in relation to the transaction which underlies this lawsuit?

A. No, there wasn't an agreement signed because that agreement applies to us acting as a third party agent of theirs for other businesses and network, specifies commissions, amount to be traded and so on and so forth, and that would not enter into a pilot project.

While the agreement contained in the packet was not useful for purposes of any potential agreement between Varco–Pruden and Tradecorp, it does reflect that Tradecorp was in the practice of using signed contracts when making agreements with businesses and their standard practice was not to simply rely upon oral representations.

exception was made which contradicts their standard business practice.

It should further be noted that the stated purpose of the May 8, 1985, meeting was to simply inform Varco–Pruden of the benefits of barter transactions. (*See, e.g.,* Fairless deposition at p. 19) Nonetheless, the plaintiff alleges that the meeting progressed to a point that Varco–Pruden was willing to trade nearly Sixty Thousand dollars ($60,000.00) worth of building materials, a known commodity, for trade credits that could be used for the purchase of a variety of goods that at the time of the meeting had not been identified.[16] Based upon these logical discrepancies the Court seriously doubts the necessity of circumventing the Statute of Frauds in order to avoid a manifest injustice.

For the above stated reasons, the defendants motion for summary judgment as to the Count Two is hereby GRANTED.

### III. SUMMARY JUDGMENT OF COUNT III; EQUITABLE ESTOPPEL

▮ The defendant has also filed a motion for summary judgment as it relates to Count Three of the original Complaint. The defendant argues that the equitable estoppel argument is simply a twist on the previously addressed promissory estoppel argument. In support of the defendant's position it cites *Kellam and Associates, Inc. v. Central Ohio Transit Authority,* Case No. 83AP–729 Franklin Cty. App., 1985 WL 10261 (April 25, 1985) (attached to Defendant's Motion for Partial Summary Judgment).

The plaintiff has properly noted that in order to prove the existence of an estoppel under Ohio law, the plaintiff must show as follows:

1. There must be something in the nature of representation by words, acts, or silence and the representation must be a factual one known to the party at the time he makes it, or at least the circumstances must be such that he is chargeable with knowledge of them;

2. The representation must communicate some fact or state of affairs in a misleading way;

3. The representation must induce reliance by the second party, and such reliance must be reasonable under the circumstances and made in good faith;

4. The relying party would suffer prejudice or pecuniary disadvantage if the party whose representation was relied upon were not estopped or precluded from asserting an otherwise valid right in contradiction to his earlier representation. *First Federal Savings & Loan Association v. Perry's Landing, Inc.,* 11 Ohio App.3d 135, 145, 463 N.E.2d 636, 646 (1983). Clearly this is the counterpart to a promissory estoppel argument, when an oral representation has not been made, rather one party through his actions, representations, admissions or even silence when he should speak out, intentionally or negligently induces another party to believe certain facts upon which that party relies to his detriment. *See, e.g., Kellam, supra.*

Essentially, the plaintiff argues that Goehring and Fairless came away from the May 8, 1985, meeting with a belief that they had formed an agreement with Varco–Pruden. The plaintiff further argues that Goehring sent a letter to confirm the existence of the agreement, and then "waited for two weeks before executing the agreement with Dublin Builders for the construction of the Tradecorp building in order to give Varco–Pruden an opportunity to deny the existence of the contract." (See Plaintiff's Memorandum in Opposition at p. 31). Plaintiff concludes that "[g]iven Tradecorp's understanding that a contract had been reached at the meeting in Memphis, combined with Defendant's failure to take affirmative steps to lead Tradecorp to believe otherwise, it was clearly reasonable for Mr. Goehring and Tradecorp. to believe that a barter agreement had been reached

---

**16.** In the deposition of Fairless, Fairless provided, "We were going to trade for our building, meaning Tradecorp's building, and that we were going to *investigate* areas that they could spend the trade credits for the building." Fairless deposition at p. 23. Fairless further stated, "We needed to talk in detail with some of their people to explore avenues where they could *potentially* use trade credits."

in Memphis." (See Plaintiff's Memorandum in Opposition at p. 31).

By the plaintiff's own actions, either the plaintiff had doubts as to whether an agreement existed, which would seriously negate the reasonability of the plaintiff's reliance, or they wished to create a contract pursuant to U.C.C. § 2–201(1) and (2)'s provisions for confirming letters. However, if there was a meeting of the minds, it would seem to be infinitely more logical to simply send the defendants a contract spelling out the terms of their of the minds, it would seem to be infinitely more logical to simply send the defendants a contract spelling out the terms of their agreement, rather than take the almost subversive route of a confirmation letter.

As the Court has previously found, the letter dated May 10, 1985, from Goehring to Jim Drake did not constitute a written confirmation of the existence of an agreement and therefore, Varco–Pruden had no duty under UCC § 2–201(2) to mail a written notice of objection to the letter's contents within ten (10) days of its receipt.[17] Furthermore, as the Court has previously mentioned, the reasonability of plaintiff's reliance was questionable at best. It appears that the perpetuation of an unjust situation as a result of any ruling this Court would make, would only occur by forcing the defendant to continue to defend themselves against this action. Therefore, the plaintiff's argument is not well taken and the motion for partial summary judgment as to Count Three is hereby GRANTED.

IT IS SO ORDERED.

---

**17.** UCC § 2–201(2) provides as follows:

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.