106 F.3d 400
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
KARN MEATS, INC., Plaintiff-Appellant,
v.
RALLY'S, INC., Defendant-Appellee.
 No. 95-4087.
 United States Court of Appeals, Sixth Circuit.
 Jan. 23, 1997.
 
 Before: NORRIS, SUHRHEINRICH, and BATCHELDER, Circuit Judges.
 BATCHELDER, Circuit Judge.
 
 
 1
 Plaintiff Karn Meats, Inc. ("Karn"), appeals the district court's grant of summary judgment for defendant Rally's, Inc.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 Karn processes and sells meat and meat by-products. Rally's is a fast-food chain restaurant. In its complaint, Karn alleges that in 1987 it entered into an oral contract to supply ground beef to Rally's. According to the complaint, authorized agents of Rally's made oral representations to Karn "which entailed a continuing business relationship for Karn to supply fresh ground beef to Rally's." Karn therefore invested about $1.5 million to enlarge and upgrade its facilities for Rally's. In 1991, Rally's terminated Karn as a supplier. Karn claims this alleged breach of an express, oral, or implied contract, or quasi-contract, has caused and will indefinitely cause Karn to lose money.
 
 
 3
 In granting summary judgment for Rally's, the district court found that the material facts were not disputed. The district court concluded that those undisputed facts did not support a finding that there was a contract between Rally's and Karn Meats because Karn had failed to present evidence that the alleged "ongoing and endless" contract had either a quantity term or a negotiated price term. In the absence of some evidence establishing these terms, the district court could not find any enforceable contract. Additionally, the court held that, because the alleged contract was for the sale of goods for more than $500, it was unenforceable under the Uniform Commercial Code Statute of Frauds, § 2-201, codified in Ohio as OHIO REV.CODE § 1302.04. None of the three exceptions to the statute of frauds, see id. § 1302.04(C), applied to this alleged contract, the court concluded, and Karn Meats failed to present evidence that would permit the court to enforce the contract under principles of equity. Therefore, Rally's was entitled to judgment as a matter of law.
 
 II. DISCUSSION
 
 4
 We review the district court's grant of summary judgment de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.1988) (citations omitted). A district court's determination of state law is also reviewed de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).
 
 
 5
 On appeal, Karn contends that the district court erred in granting summary judgment because there remain in dispute facts material to both the existence of a contract and the enforceability of that contract. Further, Karn claims that Rally's is not entitled to judgment as a matter of law.
 
 
 6
 * Karn contends that the parties, under OHIO REV.CODE § 1302.07, have an enforceable oral contract, which Karn characterizes as a requirements contract.[1] Karn objects to the district court's finding that because the pricing formulas used by the parties changed regularly, there was no negotiated price term for the beef it sold to Rally's, and further claims that when reasonable minds can differ on the termination date of a contract, summary judgment on that issue is inappropriate.
 
 
 7
 We have carefully reviewed the evidence presented to the district court. We hold that the district court's conclusion that the material facts are not in dispute is correct, and that the district court correctly held that those facts do not establish a contract, requirements or otherwise. Karn's best evidence that it had a requirements contract with Rally's is a statement by a Rally's executive that Karn "was expected to be able to produce whatever quantity was faxed in." This is not enough. It is undisputed that the only quantities faxed in were the daily orders which Rally's faxed to Karn. We agree with the district court's finding that this statement demonstrates only that there were day-to-day orders, i.e., contracts, between the parties. Each order is an individual contract to fulfill. None indicates any future commitment. Cf. General Motors Corp. v. Kosydar, 310 N.E.2d 154, 159 (Ohio 1974) ("Where the terms of such a contract are specific, the agreement to buy or sell what is 'needed' or 'required' has been enforced by the courts with little difficulty, and has been held to be based upon consideration." (emphasis added) (citations omitted)), followed in NLO, Inc. v. Limbach, 613 N.E.2d 193, 196 (Ohio 1993).
 
 
 8
 Furthermore, as the district court correctly held, the evidence presented by Karn does not suffice to establish any other term necessary to support a finding that there was an enforceable contract. The undisputed facts in the case demonstrate that Rally's changed its product line on a regular basis and that the pricing formula had changed several times over the course of the relationship between the parties. Thus, as the district court held, there was no negotiated price term and not even a specific good that Karn claims it had a contract to supply. The district court correctly held that Karn had failed to present evidence from which the court could find an enforceable contract. That being the case, it is unnecessary for us to consider Karn's argument regarding the termination date of the alleged contract.
 
 B
 
 9
 Karn next contends that the district court erred in holding that it had no contract enforceable under an exception to the statute of frauds. According to Karn, Rally's admitted the existence of an oral contract, and therefore, the contract is specifically excepted from the statute of frauds under OHIO REV.CODE § 1302.04(C)(2), which provides that a contract not satisfying § 1302.04(A) is enforceable "if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted...." OHIO REV.CODE § 1302.04(C)(2). Plaintiff cites Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134 (6th Cir.1983), to support this contention. However, we conclude that even under Roth, in which a panel of this court expanded the judicial exception of § (C)(2), see id. at 142 ("no longer may a party admit the existence of a contract, or facts which may establish existence of a contract, and simultaneously claim the benefits of the statute of frauds" (emphasis added) (citing opinions from Maine and Iowa, but not Ohio, courts)), Karn cannot prevail.
 
 
 10
 Karn maintains that Rally's admitted in deposition testimony the facts that demonstrate an enforceable contract, including that Karn was obligated to supply all of Rally's hamburger needs; that to do so, Karn was expected to expand; that contractual restrictions on Karn included its being forbidden from selling hamburger patties made to Rally's specifications to others; and that in reliance, Karn then made renovations it needed only for Rally's business. Karn points in particular to statements by Rally's officials that Karn should "[t]ake care of us now, and we will work with you down the road[,]" and "I think foremost that Rally's would continue [with] that particular supplier assuming the supplier was meeting the demands, i.e., specifications and delivery of the product."
 
 
 11
 Karn contends that one major admission of the existence of a contract, for purposes of § (C)(2), came during the deposition of Scott Wintrow, Rally's purchasing director, when he discussed individual Rally's restaurants which Rally's had traded to Snapp's, apparently another chain, in exchange for Snapp's restaurants. Old Rally's restaurants became Snapp's restaurant, and vice versa. Wintrow said that Snapp's was "able to take advantage of our contracts...."
 
 
 12
 What Karn calls Rally's "most telling admission" occurred during Wintrow's March 1991 visit to Karn. Aware that Karn was converting its plant to produce frozen hamburger patties for Rally's. Wintrow wrote to Richard Karn, Karn's owner, confirming that Karn had "the capabilities of running up to 500,000 pounds of frozen 4/1# patties for Rally's, once we give you the go ahead.... Once we have a confirmed date for rollout of the frozen product, I'll let you know."
 
 
 13
 We have reviewed these depositions but have found no admissions of facts that would establish the existence of a specific contract between Karn Meats and Rally's. While there is certainly evidence of ongoing dealings between the parties, the depositions do not contain admissions of facts that establish specific contract terms, i.e., price, quantity, specific goods, or time, or facts that demonstrate that Rally's promised to buy from Karn if Karn continued to expand. We hold that the district court correctly concluded that the alleged contract is neither excepted from the operation of nor enforceable under the statute of frauds.
 
 C
 
 14
 Finally, Karn contends that because of OHIO REV.CODE § 1301.03,[2] the doctrine of promissory estoppel overrides, or is an exception to, Ohio's statute of frauds, and that under that doctrine, Karn's oral contract with Rally's is enforceable. The district court, citing Columbus Trade Exch. v. Amca Int'l Corp., 763 F.Supp. 946, 955 (S.D.Ohio 1991), held that Ohio law allows parties to circumvent the statute of frauds if the conditions of § 139 of the Restatement (Second) of Contracts, RESTATEMENT (SECOND) OF CONTRACTS § 139(1) (1981), are met.[3] However, the court found neither evidence of a promise by Rally's nor evidence of reasonable reliance by Karn. We do not adopt the district court's reasoning, but we agree that promissory estoppel is not available to rescue Karn from its failure to memorialize in writing its dealings with Rally's.
 
 
 15
 OHIO REV.CODE § 1301.03 provides, "[u]nless displaced by the particular provisions of Chapters ... 1302, ... the principles of law and equity ... shall supplement their provisions." The statute of frauds applicable in this case, OHIO REV.CODE § 1302.04(A), begins, "[e]xcept as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless...." There are three exceptions to the section's rule of unenforceability, and they are explicitly set out in § 1302.04(C).[4] Promissory estoppel is not one of them. See id. Therefore, it is clear that the particular provisions of § 1302.04 do displace the equitable principle of promissory estoppel, see id. § 1302.04, and the plain meaning of §§ 1301.03 and 1302.04 does not permit the use of promissory estoppel to enforce a contract that neither complies with the provisions of the statute of frauds nor falls within its explicit exceptions.
 
 
 16
 We AFFIRM.
 
 
 
 [1]
 A contract term measuring the quantity by the buyer's requirements means such requirements as may occur in good faith. OHIO REV.CODE § 1302.19(A). "A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of good concerned imposes unless otherwise agreed an obligation ... by the buyer to use best efforts to promote their sale." Id. § (B)
 
 
 [2]
 The reference to § 1306 in OHIO REV.CODE 1301.03 (1993) was recently deleted from this section. See OH LEGIS 146 (1996), 1996 OHIO LAWS File 146 (S.B. 155). That does not affect this action
 
 
 [3]
 Columbus Trade does not hold that Ohio law allows parties to circumvent the statute of frauds if the four conditions of § 139 are met, and in fact, that case expressly concedes that neither the courts of Ohio nor the federal courts have addressed the issue. However, the district court in Columbus Trade did elect to "look to the Restatement of Contracts, Second § 139 for guidance." See 763 F.Supp. at 954-55
 
 
 [4]
 OHIO REV.CODE § 1302.04(C) (1993) provides:
 (C) A contract which does not satisfy the requirements of division (A) of this section but which is valid in other respects is enforceable:
 (1) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of the repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for the procurement; or
 (2) if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of good admitted; or
 (3) with respect to good for which payment has been made and accepted or which have been received and accepted in accordance with section 1302.64 of the Revised Code.