**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0622n.06

**No. 08-3194**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Sep 01, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| COPELAND CORPORATION, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHOICE FABRICATORS | ) | SOUTHERN DISTRICT OF OHIO |
| INCORPORATED, | ) | |
| | ) | |
| Defendant-Appellee. | | |

Before: CLAY and SUTTON, Circuit Judges; THAPAR, District Judge.[*]

SUTTON, Circuit Judge. At stake in this diversity action is whether Choice Fabricators, Inc.
breached its manufacturing contract with Copeland Corporation. A jury found it did not, and the
district court denied Copeland's motion for judgment as a matter of law. We affirm.

I.

In November 2001, Copeland and Choice entered into a three-year contract making Choice
the sole supplier of several stamped steel parts that Copeland uses in making compressors for air
conditioning and refrigeration products. The contract divided the parts into two categories. Choice
agreed to provide parts in the first category at a fixed price for the term of the contract. And it agreed

---

[*] The Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

to provide parts at a fixed price in the second category, though with the qualification that it would receive a two-percent price reduction during the second year of the agreement and an additional two-percent reduction during the third year.

Market conditions soon conspired against the contract. In December 2003, Choice informed Copeland that it could no longer supply parts at the current prices and would start passing on a surcharge in January 2004 that reflected its increased costs. Several proposals were exchanged, and certain emails from Copeland in December 2003 and February 2004 suggest, at the least, that Copeland considered modifying its agreement with Choice to account for the drastic increase in steel prices. Choice did not start demanding payment of the surcharge until February 2004, and, in March 2004, Copeland sent a letter indicating it would pay the surcharge under protest. Copeland sent seven protest letters in total over the next several months, although Chad Hartley, author of the first protest letter, told Choice that the letters were merely pro forma.

In November 2004, Copeland filed a lawsuit against Choice, alleging that it breached the 2001 fixed-price contract. A jury returned a verdict in favor of Choice, and the district court rejected Copeland's motion for judgment as a matter of law, *see* Fed. R. Civ. P. 50(b).

II.

A.

The jury answered the key question in this case—whether Copeland and Choice modified their 2001 fixed-price contract—and the focus of Copeland's appeal boils down to one essential argument: The jury verdict cannot stand because Ohio's statute of frauds, *see* O.R.C. § 1302.04, bars a modification in this case. We disagree.

Under Ohio law, as an initial matter, the jury generally decides whether a writing satisfies the statute of frauds. *See Glenmoore Builders, Inc. v. Smith Family Trust*, No. 24299, 2009 WL 1862541, at *10 (Ohio Ct. App. June 30, 2009) (affirming the denial of a JNOV motion where party did not submit "the statute of frauds defense to the jury"); *Woods v. Cobbins*, No. 20295, 2004 WL 2429801, at *6 (Ohio Ct. App. Oct. 8, 2004). And it is true, as Copeland points out, that the district court refused (over Copeland's objection) to instruct the jury on the statute of frauds. But Copeland waived this issue on appeal by raising it for the first time in its reply brief. *See United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993). We therefore do not consider the relevance of the missing jury instruction, but ask ourselves only whether the statute of frauds entitles Copeland to judgment as a matter of law. *See* Fed. R. Civ. P. 50(b); *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 174–75 (6th Cir. 1996).

We give fresh review to the district court's Rule 50 determination, and apply the law of the forum State (Ohio) when analyzing the sufficiency of the evidence. *See K & T Enters.*, 97 F.3d at 175–76. We therefore view the evidence "in a light most favorable to" Choice, give Choice the benefit of all reasonable inferences and upset the verdict only if "reasonable minds could come to

but one conclusion, that being in favor of" Copeland. *Glenmoore Builders*, 2009 WL 1862541, at *10; *see also Sanek v. Duracote Corp.*, 539 N.E.2d 1114, 1117 (Ohio 1989).

Even under this standard, Copeland argues, no writing satisfies the statute of frauds. Both Copeland and Choice agree that Ohio's enactment of the Uniform Commercial Code (UCC) governs their contract. And the Ohio UCC includes a statute of frauds, which says in relevant part:

> [A] contract for the sale of goods for the price of five hundred dollars or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . . A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this division beyond the quantity of goods shown in such writing.

O.R.C. § 1302.04(A). While the writing need only "afford a basis for believing that the offered oral evidence rests on a real transaction," it must satisfy "three definite and invariable requirements": (1) it must "evidence a contract for the sale of goods," meaning it must indicate a contract has been made although the contract itself may be oral; (2) it must include "authentication which identifies the party to be charged" and (3) "it must specify a quantity." U.C.C. § 2-201 cmt 1; *see also Columbus Trade Exch., Inc. v. AMCA Int'l Corp.*, 763 F. Supp. 946, 950 (S.D. Ohio 1991). When parties modify a contract governed by this statute of frauds, the modification must comply with the writing requirement as well. *See* O.R.C. § 1302.12(C); *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 186 F.3d 815, 819 (7th Cir. 1999) (listing cases considering identical UCC provisions); *Top Roc Precast Corp. v. E.S. Canfield Co.*, No. 9-087, 1982 WL 5721, at *1 (Ohio Ct. App. Dec. 10, 1982).

The record evidence supports a finding that Copeland and Choice modified their agreement in compliance with Ohio's statute of frauds. On February 19, 2004, Chad Hartley, a Copeland employee, emailed Darlence Lawrence, a Choice employee, stating:

> For clarification, I need the following: Surcharge costs for Feb. by [product number;] [r]evised price list effective Mar. 1 . . . I need to clearly understand what all of th[e] extra charges are. I know it is difficult due to the rapid change in the market conditions, but it is critical to understand what was agreed on at each point in time. I would like to propose we review this on a monthly basis until the market settles and make adjustments as necessary.

J.A. 2129. Drawing all inferences in Choice's favor, as we must at this stage of the case, the email acknowledges a pre-existing agreement modifying the terms of the 2001 fixed-price contract. The past tense "agreed" suggests that an agreement already exists, and the reference to surcharge costs and price variances between February and March suggests the agreement is something other than the 2001 fixed-price contract. It must: Why else review and adjust prices monthly? The 2001 fixed-price contract gave the parties no reason for making these adjustments.

Hartley's email also represents a writing "signed by the party against whom enforcement is sought." O.R.C. § 1302.04(A). A "signed" writing under § 1302.04 includes any writing with a "symbol adopted by a party with present intention to authenticate" that writing. *id.* § 1301.01(MM). Hartley sent the email from his Copeland email address, which identifies the sender as "CJHartley," and closed the email with "Chad." J.A. 2129. That suffices to clear § 1301.01's modest threshold.

Hartley's email, we recognize, does not include a quantity term. But that is not a problem here. Copeland cites no authority, and we are aware of none, requiring *all* written modifications to

include a quantity term. Nor does § 1302.12(C) mention any such requirement. The requirement also makes no sense in the context of a modification—like this one—that does not change the quantity requirements of the contract. The purpose of the statute of frauds is to prevent unfounded oral contract claims, *see Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 142 (6th Cir. 1983), a function that has no place when the quantity term in the written underlying contract remains unchanged throughout the parties' modification.

In the absence of any modification to the quantity term, moreover, there *is* a writing that satisfies this aspect of the statute of frauds—namely, the original contract. Multiple writings made at different times, it has long been true, may be construed together to satisfy the statute of frauds. *See Beggin v. Ft. Worth Mtge. Corp.*, 638 N.E.2d 604, 607 (Ohio Ct. App. 1994). The 2001 fixed-price contract includes a quantity term, which serves the purpose underlying the quantity-term requirement: limiting the extent of a party's liability under any oral terms of a contract, *see* U.C.C. § 2-201 cmt.1; *id.* § 2-209 cmt. 3; *see also Thorn's Diesel Serv., Inc. v. Houston Ship Repair, Inc.*, 233 F. Supp. 2d 1332, 1341 n.12 (M.D. Ala. 2002) (noting some commentators' views that UCC § 2-209 should apply only in limited circumstances, such as "where the modification increases the quantity term"). By combining the 2001 fixed-price contract and Hartley's email, a jury readily could find that Copeland and Choice modified their agreement in compliance with the statute of frauds.

In resisting this conclusion, Copeland offers several arguments. *First*, it maintains that no combination of writings satisfies the statute of frauds because any modification of an essential term

of a contract governed by the statute of frauds must be in writing. Price, the argument continues, is an essential term of any manufacturing agreement, and Hartley's email does not contain the modified price term or explicitly state that the price term will vary from month to month. But in pushing this argument, Copeland relies upon cases under Ohio's general statute of frauds, *see* O.R.C. §§ 1335.04, 1335.05, not its UCC-specific statute of frauds, *see id.* § 1302.04. As we have explained before, a writing subject to Ohio's UCC statute of frauds does not need to comply with the general statute, and it may satisfy the UCC statute "even if material terms . . . are absent or misstated." *Roth*, 705 F.2d at 141–42 & n.12 (6th Cir. 1983).

*Second*, Copeland contends that it is entitled to judgment as a matter of law based on legal errors made by the district court. In one respect, we agree. When the district court held that conduct alone may satisfy the statute of frauds, it applied the wrong legal standard, and neither of the cases upon which it relied support that position. *See Fisk Alloy Wire, Inc. v. Hemsath*, No. L-05-1097, 2005 WL 3557392, at *9 (Ohio Ct. App. Dec. 30, 2005); *Paramount Supply Co. v. Sherlin Corp.*, 475 N.E.2d 197, 206 (Ohio Ct. App. 1984). But because Copeland still loses under the proper legal standard—the one applied above—these errors come to naught.

*Third,* Copeland argues that the jury should not have considered whether Copeland and Choice modified their 2001 fixed-price agreement. According to Copeland, Choice waived its modification defense because modification is an affirmative defense that Choice never pled and did not even raise until a month before trial. *See* Fed. R. Civ. P. 8(c)(1); *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). Yet Ohio treats modification as an issue of fact, not as an affirmative

defense. *See Coldwell Banker Residential Real Estate Servs. v. Sophista Homes, Inc.*, No. CA-13191, 1992 WL 303073, at *3 (Ohio Ct. App. Oct. 26, 1992). *Foos v. Hydraulic Parts Store* is not to the contrary: Modification was not relevant to that appeal, and the court mentions modification only when recounting how the defendant chose to structure his answer. *See* No. 97-AP-020015, 1998 Ohio App. Lexis 333, at *3 (Ohio Ct. App. Jan. 9, 1998).

B.

Copeland next raises a number of issues surrounding Choice's contract-waiver defense—namely, that, even if Copeland and Choice did not modify the 2001 fixed-price contract, Copeland waived the fixed-price term through its conduct and oral statements. But in this case the jury returned a special verdict, finding that Copeland and Choice modified their contract in good faith. When a jury verdict is not based on alleged errors, as the special verdict establishes here, the errors are mooted and cannot serve as the basis for judgment as a matter of law or a new trial. *See Walker v. Bain*, 257 F.3d 660, 672 (6th Cir. 2001); *Springston v. Consolidated Rail Corp.*, 130 F.3d 241, 246 (6th Cir. 1997).

C.

Copeland next argues that the district court erred by refusing to give jury instructions on the necessary elements of contract formation (offer, acceptance, meeting of the minds), an issue that receives abuse-of-discretion review. *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 387 (6th Cir. 2008). We may order a new trial only if (1) the omitted instruction correctly stated the law, (2) the

instruction was not substantially covered by other instructions and (3) the failure impaired Copeland's theory of the case. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 901 (6th Cir. 2004). Had the jurors understood that modification requires mutual assent, Copeland claims, they would not have found a modification in this case. But two different jury instructions provided that modification requires mutual assent, and one of them explicitly said that unilateral modification "has no effect," J.A. 668. Copeland's rejected instruction is covered by the given instructions, leaving no risk of error.

D.

Copeland, finally, argues that the district court erred by excluding a duplicate of the ten-page terms-and-conditions document Copeland allegedly attaches to its purchase orders, which contains a no-oral-modifications clause. Judicial estoppel, Copeland claims, bars Choice from contesting the authenticity of the terms-and-conditions duplicate. But Choice relied on the terms and conditions only in motions that were denied, and judicial estoppel applies only when a party "prevail[s] in one phase of a case on an argument and then rel[ies] on a contradictory argument" in another phase, *Valentine-Johnson v. Roche*, 386 F.3d 800, 811 (6th Cir. 2004) (internal quotation marks omitted). Copeland next argues Choice's defensive reliance on the terms-and-conditions in its summary judgment brief constitutes a judicial admission of fact. *Cf. Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). But Copeland cites no authority for extending the judicial admission doctrine from pleadings and discovery responses to legal briefs. The district court also properly applied the Best Evidence Rule when excluding the terms-and-conditions

duplicate. Choice contested whether the duplicate terms and conditions were authentic, and Copeland never argued that any of the Rule 1004 exceptions applied. *See* Fed. R. Evid. 1002–04. The exclusion of this evidence does not entitle Copeland to a new trial.

III.

For these reasons, we affirm.